841 F.2d 77
 10 Fed.R.Serv.3d 971
 Robert (Bobby) SMITH; Ronald D. Carnes; Bradford Mizell
Lilley; Donald W. Morgan; Franklin D. Strader; John H.
Russell; John Harrington; Alonzo Watts; Clifton Speight;
William Ryder; Ronney McBride; Ray Forbes, Plaintiffs-Appellees,
v.
Vernon Lee BOUNDS, Commissioner, State Department of
Corrections; Stanley Blackledge, Warden, Central State
Prison; R.L. Turner, Superintendent of Odom Correctional
Institution of the North Carolina Department of Corrections;
James Holshouser, Governor, State of North Carolina; F.R.
Moore, Sergeant, Central Prison; Franklin Mahan, Regional
Superintendent; M.S. Lee, Captain, Washington County Unit
3560, Defendants-Appellants.
 No. 86-7579.
 United States Court of Appeals,
Fourth Circuit.
 Argued Oct. 6, 1987.
Decided March 3, 1988.
 
 Andrew Albert Vanore, Jr., Chief Deputy Atty. Gen. (Lacy H. Thornburg, Atty. Gen., Sylvia Thibaut, Asst. Atty. Gen., North Carolina Dept. of Justice, Raleigh, N.C., on brief), for defendants-appellants.
 Barry Nakell, Chapel Hill, N.C., University of North Carolina School of Law, for plaintiffs-appellees.
 Before WINTER, Chief Judge, RUSSELL, WIDENER, HALL, PHILLIPS, MURNAGHAN, SPROUSE, ERVIN, CHAPMAN, WILKINSON and WILKINS, Circuit Judges, and BUTZNER, Senior Circuit Judge, sitting in banc.
 PER CURIAM.
 
 
 1
 We reheard this case in banc, and we affirm the judgment of the district court on the facts and for the reasons set forth in the panel opinion, Smith v. Bounds, 813 F.2d 1299 (4 Cir.1987), as supplemented by the additional comments which follow.
 
 
 2
 Defendants contend that they presented a case of excusable neglect under Rule 60(b), F.R.Civ.P., justifying relief from the May 14, 1985 order, decreeing that the state must provide assistance to prisoners by trained attorneys, and permission to reopen the case in order to show that North Carolina had a constitutionally acceptable prisoner library program. We note two significant factual findings by the district court in rejecting this contention. First, in denying defendants' initial motion for reconsideration, the district court concluded that defendants had not shown excusable neglect because "defendants' failure to respond to the December 21, 1984 order was not an isolated incident. Clearly, defendants knew or should have known that counsel had a history of failing to respond to the court's orders."
 
 
 3
 Similarly when the district court denied defendants' second renewed motion for reconsideration,* it dealt with defendants' argument that while Safron's dereliction in failing to respond to the December 21, 1984 order was not excusable neglect, their failure to respond was excusable because Safron's omission was an isolated incident which neither defendants nor Safron's supervisors could have anticipated. Again it found that "actions of counsel which precipitated the May 14, 1985 order and opinion were not isolated incidents." It noted that "the state had failed eleven other times over the course of this litigation to timely respond to this court's orders.... Thus, the state's failure to comply with the court's orders cannot be laid solely at Mr. Safron's door ... [T]he court concludes that defendants must share the responsibility for counsel's failure to provide the court with sufficient information to determine the adequacy of the law library plan."
 
 
 4
 Coupled with these factual findings is the district court's finding, described in the panel opinion and reiterated by the district court in its opinion denying the initial motion for reconsideration, that North Carolina was unable or unwilling to implement its library plan consistent with minimum constitutional requirements.
 
 
 5
 From the facts of record and for the reasons set forth in the panel opinion as well as our own examination of the record, we conclude that these findings of fact are not clearly erroneous. If, as the district court permissibly found, there was neglect on the part of all of the defendants, it follows that they could not establish "excusable neglect," they had no right to reconsideration under Rule 60(b), and the district court correctly denied their repeated motions for reconsideration.
 
 
 6
 AFFIRMED.
 
 WIDENER, Circuit Judge, dissenting:
 
 7
 I respectfully dissent, for, in my opinion, the district court not only failed to comply with our mandate, it abused its discretion. The majority decision effectively ends litigation in this matter, at least at this stage, without allowing the Department of Corrections to be given the opportunity to present its evidence showing the constitutional compliance of its prison law libraries. The record contains such evidence that has been collected and tends to establish that the libraries have been in compliance for some time.
 
 
 8
 * The history of the litigation in this case deals with two aspects, the plan and its implementation. The litigation involving the approval of the plan proposed by the State culminated in the Supreme Court decision in Bounds v. Smith, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), which upheld this court which had held that the proposed plan met constitutional standards[1] and that the State was under no constitutional obligation to offer inmates both research facilities and the services of attorneys. The plan thus encompassed a proposal which, when implemented, would provide the prisoners the constitutional right of access to the courts.
 
 The plan, as approved, included:
 
 9
 (1) the establishment of a number of central and core law libraries at various prison facilities around the State;(2) transportation and lodging to be provided to prisoners needing to travel to the libraries from other facilities;
 
 
 10
 (3) training of inmate assistants to aid their fellow prisoners;
 
 
 11
 (4) priority given to inmates working under deadlines; and
 
 
 12
 (5) providing of free copying services to indigent prisoners.
 
 
 13
 This court, in Harrington v. Holshouser (Harrington I), tabulated in 598 F.2d 614 (4th Cir.1979) (unpublished), added an additional requirement of adequate access to the libraries for inmates on disciplinary segregation.
 
 
 14
 The remainder of the litigation, with only slight exception, has concerned itself with the proper implementation of the approved plan. The State filed with the district court a certificate of compliance after instituting the prison law library system, the filing of which certificate was required by the plan. The prisoners objected, and the district court dismissed the action, finding the system constitutionally sufficient. From this order, the prisoners appealed in Harrington I, basing their objections on four grounds: (1) none of the law libraries were provided with law digests or indices; (2) the defendants did not provide the district court with information from which it could determine whether the placing of the libraries and the proposed transportation system could adequately serve prisoners on a statewide basis; (3) the certificate of compliance did not address the important facets of the plan dealing with the training and use of inmate assistants and offering free copies to indigents; and (4) the defendants adopted a regulation establishing certain restrictions on the use of the libraries by inmates in disciplinary segregation which was not included in the proposed plan. We held that the first claim had been argued and resolved in the adoption of the plan and thus was not subject to relitigation. As to the remaining three issues, the district court's order of dismissal was vacated and the case remanded for further fact finding. Additionally, the district court was instructed to address whether bed space was available for those prisoners who had to be transferred for library access.
 
 
 15
 Some four years later, on April 18, 1983, having reconsidered the case on account of the remand in Harrington I, the district court again dismissed the case upon its finding that the State had satisfactorily implemented the plan. Thus, the district court at this juncture had twice approved the State's implementation of the plan by dismissing the case based on the law library system's constitutional compliance. Another appeal by the prisoners was filed in this court on four issues somewhat similar to those considered in Harrington I: (1) the adequacy of the training provided to prisoner paralegals staffing the law libraries; (2) copying charges assessed against prisoners unable to pay; (3) the permissibility of limiting access to the libraries for prisoners on disciplinary segregation; and (4) the State's plan to provide access by means of short-term transfers. Harrington v. Holshouser, 741 F.2d 66, 67-68 (4th Cir.1984) (Harrington II ).
 
 
 16
 We affirmed the district court's denial of relief on the third and fourth issues, access for prisoners on disciplinary segregation and access by short-term transfers, and remanded for further fact finding on the first and second issues, paralegal training and copying charges against indigent inmates. We also added a requirement that the district court make fact findings on the extent of library use and number of requests for library use which were denied. This was the status of the case in the district court when the instant proceedings got under way, which culminated in the district court's orders of December 21, 1984, to which the State failed to respond, and the order of May 14, 1985 which imposed the attorney assistance plan on the State.
 
 II
 
 17
 The district court, of course, had ample reason to be upset with Mr. Safron due to his representation of the Department of Corrections in this stage of the litigation, but this should be an insufficient reason to decline to carry out our mandate as precisely set forth in Harrington II. A lower court's declining to carry out a mandate of its superior court for the reason that one of the parties may be recalcitrant (even if that be the case here) is a reason which is insufficient in law and should not be permitted. Our instructions were simple, direct, and easily understood, and are contained in four uncomplicated sentences found in 741 F.2d at p. 70.
 
 
 18
 Once a case has been decided on appeal and a mandate issued, the lower court may not "vary it [the mandate] or examine it for any other purpose than execution; or give any other or further relief; or review it, even for apparent error, upon any matter decided on appeal; or intermeddle with it, further than to settle so much as has been remanded." In re Sanford Fork & Tool Co., 160 U.S. 247, 255, 16 S.Ct. 291, 293, 40 L.Ed. 414 (1895). And, while the imposition of the plan for attorneys' services was not explicitly stated to be "a matter left open," the district court treated it as such. That question too has been recently treated by us in Stamper v. Baskerville, 724 F.2d 1106 (4th Cir.1984), in which we relied on the language I have quoted above from Sanford and added: "Nor do we believe that In re Sanford should be read to permit a lower court to treat an issue not before the appellate court as 'a matter left open.' 160 U.S. at 255-56, 16 S.Ct. at 293. Were this the rule, a lower court could circumvent any and every order ... simply by passing on an issue not present on appeal. A lower court may decide 'matters left open' only insofar as they reflect proceedings consistent with the appellate court's mandate." 724 F.2d at 1108. A leading text on the subject agrees: "[W]hen the further proceedings [on remand] are specified in the mandate, the district court is limited to holding such as are directed." 1B Moore's Federal Practice Sec. 0.404 p. 172 (1983).
 
 
 19
 The Supreme Court, in this very case, decided the questions before it on the basis that the district court had left to the State the choice of which alternative would "most easily and economically" fulfill its duty. 430 U.S. at 819, 97 S.Ct. at 1493. The State has chosen the law library system; that is undisputed. This is annunciated by the fact that the district court in its instant opinion noted that in Harrington II the court of appeals specifically rejected installing the legal assistance program. 610 F.Supp. 597, 603. The matter has thus been litigated previously and decided adversely to the prisoners.
 
 
 20
 I am of opinion that the district court erred by going beyond our mandate to fashion a remedy that this court had specifically rejected as being required. This is especially true when the record at the time of the district court's order appealed from showed, as even the majority admits, that "the state law library system may have been in compliance with constitutional requirements." 813 F.2d at 1303.
 
 
 21
 I should add, at this point, that the district court did not even consider sanctions or a contempt citation, the usual ways of insuring compliance with a court order. Such absence enters into my conclusion that the district court did not comply with our mandate as well as that it abused its discretion in failing to grant relief under Rule 60(b)(6) from its order imposing the attorneys' assistance system which is discussed below.[2]
 
 III
 
 22
 Both the district court, even as it denied Rule 60(b) relief, and this court recognized that the State's law library plan may have been in compliance as of May 1985. See district court Order, App. 542-543; Smith v. Bounds, 813 F.2d 1299, 1303 (4th Cir.1987). The majority nevertheless affirms the district court's denial of the State's FRCP 60(b) motion to present evidence of compliance (accompanying the motion in the form of affidavits)[3] for a stated reason that the State "knew or should have known" what its attorney was doing during the progression of the case. The State argues, with reason, that its reliance on Mr. Safron was based not only on a successful history in representing the Department of Corrections but also on his great success in this court and the Supreme Court as well.
 
 
 23
 Mr. Safron was licensed to practice law in 1957. He joined the Attorney General's office of the State of North Carolina in 1968. He has personally appeared before the United States Supreme Court as counsel representing the State on seven occasions, successful in each.[4] In this court, he has appeared 128 times, beginning in 1972, zealously representing the State. In an affidavit filed by Mr. Safron, he admitted with candor his neglect of duties in not responding to the December 21st order, and, expressing his deep regret and abject apology to the court for that neglect, took full responsibility. Additionally, James C. Woodard, Secretary of the Department of Corrections from 1981-84, filed an affidavit stating that he had no reason to doubt Mr. Safron's "most thorough" handling of the case as he had always done excellent work in the past for the Department.
 
 
 24
 In affidavits filed by Mr. Safron's coworkers on the case,[5] the State showed that no one other than himself was aware of his ongoing negligence in answering the December 21, 1984 order. Despite this, the majority places the blame for a single attorney's actions on the State when the record shows that the State had little or no knowledge of the attorney's then contemporaneous actions and completely relied on his work, being assured by his past accomplishments. Mr. Safron had never shown dereliction in the past representing the State and the Department of Corrections, both of which placed their confidences in his abilities to properly conduct the case. The record discloses no reason that the State should have doubted his conduct of the ongoing litigation. But, despite these facts, the district court, and now this court, has foreclosed all consideration of the facts going to the merits of the case due to the neglect of one State's attorney who was in the sole position to monitor compliance with the district court's order.
 
 
 25
 The majority takes the controlling authority in this circuit to be Compton v. Alton Steamship Co., 608 F.2d 96 (4th Cir.1979), and I agree. Under Compton, four things are necessary for relief under FRCP 60(b)(6). The motion must be timely; it must be premised on a meritorious defense; there must be an absence of prejudice to the opposing party; and it must be accompanied by exceptional circumstances. Compton p. 102; Smith v. Bounds, 813 F.2d at p. 1303. The majority goes on to find that the first three requisites have been met by the defendants, that of timeliness, a meritorious defense, and absence of prejudice. Again, I agree. So that leaves our difference as to whether Rule 60(b) relief should have been afforded depending upon whether or not exceptional circumstances existed. The majority holds that they did not.
 
 
 26
 I suggest, however, that the majority has overlooked not only the holding of Compton but also its reasoning. In Compton, we held it was error not to set aside a judgment based on just such conduct, where a shipowner who had been sued for wages had passed along all of the papers to a charterer who was operating the ship "since it [the shipowner] had reason to assume Bulk Food Carriers would enter an appropriate defense." 608 F.2d at 103. Under those circumstances, where a relatively small wage claim was multiplied many times by an erroneously applied penalty statute, we held it an abuse of discretion not to set aside the judgment on proper application. As our reasoning for granting relief under Rule 60(b)(6), we described that rule as the " 'catchall' clause ... [citation omitted] because it provides the court with 'a grand reservoir of equitable power to do justice in a particular case,' " citing 7 Moore's Federal Practice Sec. 60.27. We continued that the rule vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice, quoting Klapprott v. United States, 335 U.S. 601, 614-15, 69 S.Ct. 384, 390, 93 L.Ed. 266 (1949). We concluded that Compton was "just such an extraordinary case" where Rule 60(b)(6) was intended to afford relief. I contend that this is a like case. Not only is the record devoid of any action by the State, as contrasted with its attorney, which would indicate any recalcitrance or footdragging, it is full of papers which indicate that the State had proceeded to comply with our mandate in Harrington II and that her attorney simply neglected to file the papers. I think that is an exceptional circumstance which warrants relief. As we held in Compton, I would hold the action of the district court in this case declining to grant relief under Rule 60(b)(6) to be an abuse of its discretion.
 
 
 27
 I am authorized to state that Circuit Judges RUSSELL, WILKINSON and WILKINS join in this dissent.
 
 
 
 *
 Defendants' first renewed motion for reconsideration was denied by simple order without opinion
 
 
 [1]
 Except as to like access to libraries for female as for male prisoners. This was corrected by our decision in the first appeal and is not an issue here
 
 
 [2]
 The oral argument of plaintiffs' attorney that he "literally begged" Mr. Safron for compliance, which is relied upon by the majority as a base for its decision, 813 F.2d at 1304, has a hollow sound. That same attorney made no motion for contempt citations or other sanctions, the tools of every lawyer in securing compliance with court orders
 
 
 [3]
 Over 95 pages of documents consisting of affidavits, regulations and attachments were filed at the time of the motion for reconsideration, which support the Department of Corrections' contention that the law libraries are and have been constitutionally sufficient. Barbara Shaw, a Department of Corrections employee who gathered the information to comply with the district court's December 21, 1984 order, states that the photocopying regulations had been changed, becoming effective in January 1985. Further, she also forwarded to Mr. Safron revised regulations concerning access by those inmates on disciplinary segregation. Attachments showed access to the court regulations, 5 NCAC 2G .0201-.0205, setting up procedures for inmates to follow. Michael Lamm, Correctional Lieutenant at Central Prison in Raleigh, North Carolina, stated that the core library facility in Central Prison over which he had supervision is in compliance with the policies codified. He also stated that no inmates are denied access. All those who request appointments are scheduled for library time, though occasionally, some do not show. Additionally, refuting the district court's independent fact finding on the issue, Mr. Lamm stated that free photocopying of any document required by the court is allowed to inmates and is not based on indigency. From 1981-1985, Mr. Lamm helped coordinate six inmate paralegal training workshops at Central Prison for inmates throughout the State. Aaron Johnson, Secretary of Corrections, testified to full compliance of the photocopying facilities attaching the photocopying logs for previous years. Nathaniel Boykin, Head Librarian, oversees the operation of the libraries and training workshops. He states that there have been five inmate paralegal workshops from February 1983 to the date of the affidavit (June 1985). Further, he attaches the curriculum of such workshops and the lists of inmate and non-inmate attendance. Jerry Price, who has served in the capacity as Supervisor and Administrator of all of the law libraries for 10 years (June 1985), verifies the Department of Corrections' compliance with the constitution on all issues implemented by the plan
 
 
 [4]
 North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970); Parker v. North Carolina, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970); North Carolina v. Rice, 404 U.S. 244, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971); Ross v. Moffitt, 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974); Weinstein v. Bradford, 423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975); Bounds v. Smith, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); and Jones v. North Carolina Prisoners' Labor Union, 433 U.S. 119, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977)
 
 
 [5]
 Ben Irons, Chief Legal Adviser to the Secretary of Corrections, and Barbara Shaw, Department of Corrections employee, stated in affidavits that they relied on Mr. Safron to attend to the matter, both fully confident that he had done so. Lacy Thornburg, Attorney General for the State of North Carolina, also filed an affidavit stating that he was not aware of Mr. Safron's negligence in answering the December 21, 1984 order until the May 15, 1985 order