Arcangel ALVARADO,
Plaintiff–Appellant,

v.

BOARD OF TRUSTEES OF MONTGOMERY COMMUNITY COLLEGE, Raul Parilla, as President of Montgomery Community College, Defendants–Appellees.

No. 88–3007.

United States Court of Appeals,
Fourth Circuit.

Argued May 2, 1988.
Decided June 3, 1988.

Mayda Tsaknis, Rockville, Md., for plaintiff-appellant.

Maurice Baskin, Washington, D.C. (N. Peter Lareau, Baltimore, Md., Venable, Baetjer, Howard & Civiletti, Washington, D.C., on brief), for defendants-appellees.

Before WINTER, Chief Judge, MURNAGHAN, Circuit Judge, and RAMSEY, United States District Judge for the District of Maryland, sitting by designation.

MURNAGHAN, Circuit Judge:

The defendants in this case have asked the federal courts to apply a common-sense requirement in a hypertechnical fashion. If successful, they would unjustly prevent the plaintiff from having his claim of employment discrimination heard on the mer-

its by a court of law. The district judge nevertheless granted summary judgment to the defendants, while expressing regret at the result, because he believed his hands were tied by a 1983 decision of this court. The 1983 panel decision in fact has no precedential effect, and we reverse.

Arcangel Alvarado filed an action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, claiming that he had been wrongfully terminated from his temporary job and wrongfully denied permanent employment at Montgomery Community College because of his national origin. Alvarado is Hispanic, and came to this country from Colombia; he is not a lawyer, and has a limited command of the English language.

In his suit and in the administrative complaint he filed with the Maryland Commission on Human Relations and the Equal Employment Opportunity Commission (EEOC),[1] Alvarado alleges that he and other Hispanic workers were treated less favorably than American-born workers at the college. Alvarado worked for almost four months as a temporary building service worker, and claims he was promised a permanent position shortly before his termination. According to his complaint, Alvarado was told he was being terminated because there was not enough work for him to do. Nevertheless, he was immediately replaced by a non-Hispanic temporary employee, and three other American-born persons were given permanent positions.

Under Title VII, a civil action may be brought after administrative proceedings have ended or conciliation attempts have failed only "against the respondent named in the [administrative] charge." 42 U.S.C. § 2000e–5(f)(1). The naming requirement serves two purposes, and is not a mere technicality:

> First, it notifies the charged party of the asserted violation. Secondly, it brings the charged party before the EEOC and permits effectuation of the Act's primary

---

1. The filing of a timely charge of discrimination with the EEOC is a jurisdictional prerequisite to the institution of a lawsuit. *Alexander v. Gard-* *ner–Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974).

goal, the securing of voluntary compliance with the law.

*Bowe v. Colgate–Palmolive Co.,* 416 F.2d 711, 719 (7th Cir.1969); *accord, Mickel v. South Carolina State Employment Service,* 377 F.2d 239, 242 (4th Cir.1967), *cert. denied,* 389 U.S. 877, 88 S.Ct. 177, 19 L.Ed.2d 166 (1967). Aided by a relative who came along to translate, in his administrative complaint Alvarado named "Montgomery Community College" as the "employer ... who discriminated against me." In his civil suit, filed with the assistance of counsel after the Maryland Commission on Human Relations issued written findings that no probable cause existed to find unlawful discrimination and the Department of Justice issued a right-to-sue letter,[2] Alvarado named the Board of Trustees of Montgomery Community College and the president of the college as defendants. The district court granted summary judgment to the defendants on the ground that, according to this court's interpretation in *Dickey v. Greene,* 710 F.2d 1003 (4th Cir. 1983), the failure to name the board of trustees or the president in the administrative complaint violated the naming requirement. However, the 1983 panel decision of this court in *Dickey* was vacated by the grant of rehearing *en banc,* so it does not provide binding precedential authority.

Because we find that under Maryland law the board of trustees is identical with the college, we find no violation of the statutory naming requirement. The president of the college could be held substantially identical to the college, under an exception to the naming requirement that has been formally adopted by at least two other Circuits; we decline to consider the adoption of the exception here, however, because it is unnecessary in light of our

decision holding the board of trustees properly named as defendants.

### I.

Under Fourth Circuit rules, "[g]ranting of rehearing in banc vacates the previous panel judgment and opinion; the rehearing is a review of the judgment of the district court and not a review of the judgment of the panel." Fourth Cir.Loc.R. 35(c). The panel that initially heard *Dickey v. Greene* decided the case on the merits. *See Dickey v. Greene,* 710 F.2d 1003 (4th Cir.1983). However, the court granted rehearing *en banc* and vacated the panel decision. *See Dickey v. Greene,* 729 F.2d 957 (4th Cir.1984) (*en banc*). Therefore, the panel decision in *Dickey* provides no precedential authority. It is common for panel decisions to appear in published reporters even though they have been vacated by later action of the court, but the mere fact of publication does not confer precedential value on such opinions. Vacated opinions may be cited for precedential effect only when they have been validated by the court, such as when the court at the *en banc* level refers back to and adopts by reference a previously published but vacated panel opinion for purposes of convenience and economy of expression. *See, e.g., Smith v. Bounds,* 841 F.2d 77, 77 (4th Cir.1988) (*en banc*) (per curiam) ("We reheard this case in banc, and we affirm the judgment of the district court on the facts and for the reasons set forth in the panel opinion ... as supplemented by the additional comments which follow."). In *Dickey,* the *en banc* court reversed and remanded on procedural grounds, and did not reach the merits of the naming requirement issue in the case. Because *Dickey* provides no authority for the question before us, it is unnecessary to discuss or distinguish the panel opinion.[3]

---

2. In the ordinary case, the EEOC issues a right-to-sue letter to the complainant. However, when the respondent named in the charge is a "government, governmental agency, or political subdivision," the Attorney General of the United States provides notice to the complainant of his or her right to sue. 42 U.S.C. § 2000e–5(f)(1).

3. We note that several district courts have devoted attention to the vacated *Dickey* opinion,

either going to the effort of distinguishing *Dickey* or relying on it for a rule of decision. *See, e.g., EEOC v. Newtown Inn Associates,* 647 F.Supp. 957, 960 (E.D.Va.1986) (distinguishing *Dickey* panel opinion); *EEOC v. Charleston Electrical Joint Apprenticeship Training Committee,* 587 F.Supp. 528, 529–30 (S.D.W.Va.1984) (distinguishing *Dickey* panel opinion); *Kissi v. Wriston,* 584 F.Supp. 55, 59 (D.Md.1983) (following *Dickey* panel opinion). As discussed *su-*

■ An examination of the Maryland statutes creating Montgomery Community College and conferring powers and duties on the college's board of trustees clearly reveals that the board of trustees is identical with the college itself for purposes of suits such as that brought by Alvarado. Maryland has by statute created boards of trustees and empowered them to establish and operate community colleges. *See* Md. Educ.Code Ann. § 16–203 (1985). Maryland has specifically created the Board of Trustees of Montgomery Community College. *See id.* § 16–510. Another section of the statute, dealing with labor relations, defines "Public employer" as "the Board of Trustees of Montgomery Community College." *Id.* § 16–510.1(a)(15). The statute specifies: "Each board of trustees may sue and be sued." *Id.* § 16–203(k). No such provision is included in the statutes to empower the college itself to sue or be sued. Once he retained counsel to bring his lawsuit against the college, Alvarado properly filed suit against the board of trustees, in accordance with § 16–203(k).[4]

■ Title VII does not require procedural exactness from lay complainants: "EEOC charges must be construed with utmost liberality since they are made by those unschooled in the technicalities of formal pleading." *Kaplan v. Int'l Alliance of Theatrical & Stage Employees,* 525 F.2d 1354, 1359 (9th Cir.1975). When he was asked by a staff member at the Maryland Commission on Human Relations for the name of his employer, Alvarado quite naturally responded "Montgomery Community College." The Commission staff member filled out the form based on Alvarado's answers in the interview, aided by language translation provided by Alvarado's aunt, and Alvarado signed the administrative complaint. It is not reasonable to have expected Alvarado to know that Maryland statutes provide that the board of trustees of the college is the appropriate entity to "sue and be sued." Alvarado was asked where he worked, not whom he intended to sue, a technical term.

As noted above, the naming requirement is designed to provide notice to the charged party and to permit the EEOC to attempt voluntary conciliation of complaints. The two goals are in no way compromised by a finding that Alvarado satisfied the naming requirement by listing the college in the administrative complaint and the board of trustees in the lawsuit. The defendants' specious contention on appeal that Alvarado is improperly suing members of the board in their *personal* capacities is clearly belied by the form and language of the complaint, and is unworthy of further comment. The college, and therefore the board in its official capacity, was fully represented by counsel at all administrative and court proceedings, and we perceive absolutely no functional difference between the notice and participation afforded by naming the college in the administrative complaint and what would have been afforded had the board been named instead.[5] We therefore reverse the grant of summary judgment to the defendant Board of Trustees of Montgomery Community College.

## II.

The district court also granted summary judgment to the defendant president of the college, because he was not named in the administrative complaint. In light of the ambiguity in the Maryland statutes as to the role played by the president and the board in employment and other administrative matters, the decision to name the president as a defendant in the lawsuit is understandable. *Compare* Md.Educ.Code Ann. § 16–203 (giving trustees powers of general control over the college and the power to fix salaries and tenure of the president, faculty, and other employees); *with id.*

*pra,* efforts to distinguish a vacated opinion are unnecessary.

4. Of course, had Alvarado filed suit against the college instead, he would presumably have been entitled to amend his pleadings under Fed.R. Civ.P. 15(a) and (c), if necessary.

5. Similarly, had the board of trustees been listed administratively, and the college sued, no one would have been misled, or otherwise disadvantaged.

§ 16–204 (providing that the board shall appoint a president who shall recommend appointment and discharge of employees and is responsible for the conduct and administration of the college). However, Alvarado has sued the trustees and the president only in their official capacities, with the clear goal of suing the college itself. Any relief he obtains will come from the college. It might, indeed, be possible to hold the president as a defendant under the "substantial identity" exception to the naming requirement, a judicially-developed exception that has been explicitly adopted by at least two Circuits and has been applied by several district courts in this Circuit. *See Glus v. G.C. Murphy Co.,* 562 F.2d 880, 888 (3d Cir.1977); *Eggleston v. Chicago Journeyman Plumbers' Local 130,* 657 F.2d 890, 905–06 (7th Cir.1981), *cert. denied,* 455 U.S. 1017, 102 S.Ct. 1710, 72 L.Ed.2d 134 (1982); *McAdoo v. Toll,* 591 F.Supp. 1399, 1403–04 (D.Md.1984); *Jeter v. Boswell,* 554 F.Supp. 946 (N.D.W.Va. 1983); *Brewster v. Shockley,* 554 F.Supp. 365 (W.D.Va.1983); *Vanguard Justice Society, Inc. v. Hughes,* 471 F.Supp. 670, 688–89 (D.Md.1979); *Kelly v. Richland School District 2,* 463 F.Supp. 216, 219–21 (D.S.C. 1978); *Quinn v. Bowmar Publishing Co.,* 445 F.Supp. 780, 785 (D.Md.1978); *Chastang v. Flynn & Emrich Co.,* 365 F.Supp. 957 (D.Md.1973), *aff'd in relevant part,* 541 F.2d 1040 (4th Cir.1976). The Fourth Circuit has not had occasion to decide whether to adopt the substantial identity exception, but we note that language in *Chastang* was quoted with approval by this court in dictum:

> "where there is substantial, if not complete identity of parties before the EEOC and the court, it would require an unnecessarily technical and restrictive reading of [the statute]" to deny jurisdiction.

*EEOC v. American National Bank,* 652 F.2d 1176, 1186 n. 5 (4th Cir.1981), *cert. denied,* 459 U.S. 923, 103 S.Ct. 235, 74 L.Ed.2d 186 (1982) (*quoting Chastang,* 365 F.Supp. at 964).

Because we conclude that the board of trustees is identical with the college, Alvarado's suit against the board can be maintained despite his failure to name the board specifically in his administrative complaint. We deem it unnecessary to decide whether the suit against the president can be maintained through application of a "substantial identity" exception or otherwise, because the president is being sued by Alvarado only in his official capacity. We thus intimate no opinion on the validity of the exception in the Fourth Circuit.

### III.

Two other issues were raised by the defendants in their motion for summary judgment. First, the defendants contend that Alvarado's action is time-barred because he withdrew his administrative charge from the Maryland Commission and later asked to have it reinstated. Second, the defendants argue that the allegations in the complaint impermissibly exceed the scope of the administrative charge, because the complaint charges broadly that "Defendants discriminate against Hispanics in hiring because of their national origin" and "Defendants discriminate against Hispanics in job assignment because of their national origin." The district court did not address these issues because summary judgment was granted on the defendants' first claim, challenging jurisdiction based on deficiencies in meeting the naming requirement. We note that the administrative complaint was never withdrawn from the EEOC, and that the college participated without objection in administrative proceedings after reinstatement of the complaint by the Maryland Commission. We also note that while the complaint is in some places broadly worded, Alvarado has not asked for relief on behalf of any other named or unnamed plaintiffs, and has not asked that a class action be certified. We also note that his administrative complaint was similarly broad: "I and other hispanic workers were treated differently from American born workers."

We decline to decide whether summary judgment is or is not appropriate on the two issues, however, because the district court has not yet addressed them. Upon remand, the district court shall consider the

remaining issues in the defendants' motion for summary judgment.

REVERSED AND REMANDED.