Becky S. CORCORAN, Plaintiff,

v.

SHONEY'S COLONIAL, INC., et al., Defendants.

Civil Action No. 96–0043–C.

United States District Court,
W.D. Virginia,
Charlottesville Division.

Oct. 16, 1998.

Margaret McLeod Cain, Margaret McLeod Cain, Attorney at Law, Yvonne T. Griffin, Tucker & Griffin, Charlottesville, VA, for Becky S. Corcoran.

Bruce M. Steen, McGuire, Woods, Battle & Boothe, Charlottesville, VA, for Shoney's Colonial, Triple H Ent.

John Lloyd Snook, III, Snook & Haughey, P.C., Bruce M. Steen, McGuire, Woods, Battle & Boothe, Charlottesville, VA, for Pat Martin.

## MEMORANDUM OPINION

MICHAEL, Senior District Judge.

### I. INTRODUCTION

Becky Corcoran brought the instant action against Shoney's Colonial Inc., Triple H Properties, Ltd., and Pat Martin alleging that defendants violated Title VII's prohibition against discrimination on the basis of sex. 42 U.S.C. § 2000e *et seq.* Specifically, Ms. Corcoran alleges the existence of a hostile work environment due to sexual harass-

ment and retaliation for invoking her Title VII rights.[1]

Ms. Corcoran began working for Shoney's in 1980 and continued in her employment until her termination on March 1, 1995. Plaintiff alleges that Pat Martin, an assistant manager at the same Shoney's location, began making numerous unwanted sexual remarks to her and other female employees, that he exposed himself to her and grabbed her hand, forcing her to touch his penis, and that even after plaintiff formally complained to management, Martin "touched the area of her breast." Plaintiff's Memorandum In Opposition to Defendants' Motion for Partial Summary Judgment. Ms. Corcoran reported the harassment to the general manager of Shoney's on February 10, 1995. Despite this report, Shoney's management continued to arrange Corcoran's and Martin's work schedules such that they worked together for approximately one hour each day. On February 27, 1995, plaintiff sought the advice of counsel. The following day, Ms. Corcoran's attorney contacted Shoney's to determine why plaintiff and Mr. Martin continued to work together. On March 1, 1995 Ms. Corcoran was terminated. Plaintiff filed an EEOC charge on August 18, 1995 and subsequently received a Right to Sue letter.

Following plaintiff's initiation of this suit, defendants sought summary judgment on the Title VII claims. Magistrate Judge B. Waugh Crigler conducted a hearing on the motion and issued a Report and Recommendation on June 22, 1998. The Magistrate Judge recommended that this court grant summary judgment to all defendants as to plaintiff's hostile work environment claim; that summary judgment be granted to Martin as to the retaliation claim; and that summary judgment be denied to Shoney's and Triple H as to the retaliation claim. Both plaintiff and defendant filed timely objections to the Report and Recommendation. Plaintiff essentially puts forth three objections. First, plaintiff objects to the Magistrate

Judge's finding that as a matter of law plaintiff did not file a timely charge of discrimination with the EEOC. (The effect of this finding was a recommendation that this court grant of summary judgment in favor of all defendants on the hostile work environment claim) 42 U.S.C. § 2000e–5(e)(1). Second, plaintiff objects to the Magistrate's alternative basis for granting summary judgment to Martin on the hostile work environment claim based on the fact that Martin was not properly named in the EEOC charge. Third, Ms. Corcoran asks this court to apply the recent Supreme Court holdings in *Burlington Industries, Inc. v. Ellerth,* —— U.S. ——, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998), and *Faragher v. City of Boca Raton,* —— U.S. ——, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), to the Magistrate's finding that Shoney's is not vicariously liable for the harassment perpetrated by its employee, Martin.[2] Defendants Shoney's and Triple H Properties object only to the Magistrate Judge's finding that plaintiff set forth sufficient facts to sustain a retaliatory discharge claim.

This court has carefully considered the report and recommendation as well as the pleadings in the case and undertaken a *de novo* review of the entire case. *Orpiano v. Johnson,* 687 F.2d 44, 48 (4th Cir.1982). For reasons discussed in greater detail below, this court declines to adopt the Magistrate Judge's finding that Ms. Corcoran failed to file her charge in a timely manner, but adopts the Magistrate's alternative conclusion that Martin was not properly named in the charge. Summary judgment on plaintiff's hostile work environment claim is, therefore, granted in favor of Martin but denied to Shoney's and Triple H Properties. Applying the Supreme Court's decisions in *Burlington Industries* and *Faragher,* this court finds that Shoney's and Triple H Properties can be held vicariously liable for Martin's creation of a hostile work environment. Turning to Corcoran's retaliation claim, nei-

---

1. Plaintiff also brought state law claims alleging: (1) intentional infliction of emotional distress and (2) assault and battery. Because defendants are seeking summary judgment solely on the Title VII claims, the court will not address the state claims.

2. Both of these landmark Supreme Court decisions on the issue of employer liability for employee harassment were handed down subsequent to the Magistrate Judge's Report and Recommendation.

ther party objected to the Magistrate's grant of summary judgment to Martin and, after a careful review, this court adopts the Magistrate's recommendation. Defendants, however, object to the Magistrate's recommendation that this court deny summary judgment in favor of Shoney's and Triple H Properties on the retaliation claim. This court adopts the Magistrate's recommendation, thereby denying summary judgment to Shoney's and Triple H on plaintiff's retaliation claim.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "In essence ... the inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). On a motion for summary judgment the court must view all inferences drawn from the underlying facts "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## III. TIMING OF PLAINTIFF'S HOSTILE WORK ENVIRONMENT CHARGE

Subsequent to the Magistrate Judge's Report and Recommendation in this matter, the Fourth Circuit handed down its opinion in *Tinsley v. First Union National Bank*, 155 F.3d 435 (4th Cir.1998). In *Tinsley*, the court resolved an issue that has divided the courts in the Western and Eastern Districts of Virginia—whether the Virginia Council on Human Rights is a "deferral agency," as defined under Title VII, such that a discrimination claim arising in Virginia is subject to a 300 day period of limitation instead of the shorter 180 day period. *Id.* The unanimous panel held that the Virginia Council on Hu-

man Rights is a deferral agency under Title VII and that the "appropriate limitations period for filing a charge with the EEOC ... is 300 days." *Id.* at 440.

■ The plaintiff in this matter was terminated on March 1, 1995 and filed a sworn charge with the EEOC on August 18, 1995. This is well within the 300 day limitation period. The court must, therefore, decline to adopt the Magistrate Judge's recommendation that summary judgment be granted to all defendants on the hostile work environment charge.

## IV. TITLE VII'S NAMING REQUIREMENT

■ As an alternative basis for granting summary judgment to defendant Martin on the hostile work environment claim, the Magistrate Judge recommended that the plaintiff's failure to name Pat Martin in her EEOC charge barred the claim. The Magistrate noted that Ms. Corcoran's charge was completed with the assistance of her retained attorney and that there was no explanation for failing to name a key party against whom the plaintiff wished to proceed. This court agrees with the Magistrate Judge's recommendation on this issue and therefore grants summary judgment to defendant Martin on the hostile work environment claim.

In *Alvarado v. Board of Trustees*, the Fourth Circuit addressed Title VII's requirement that before a claim can be made against an individual, that person must be specifically named in an EEOC charge. 848 F.2d 457 (4th Cir.1988); 42 U.S.C. § 2000e–5(f)(1). *Alvarado* created a narrow exception to this requirement that is inapplicable to this case. The plaintiff there was allowed to bring suit against the board of trustees of Montgomery County Community College even though the EEOC charge named only the college itself. *Alvarado v. Board of Trustees*, 848 F.2d 457 (4th Cir.1988). Writing for the panel, Judge Murnaghan reasoned that it would be "hypertechnical" to find a violation of the naming requirement because the board of trustees was legally identical to the college. *Alvarado*, 848 F.2d at 458–60. Mr. Martin is not, however, legally identical to Shoney's Colonial or Triple H

Properties and summary judgment on the hostile work claim is, therefore, appropriate.[3]

## V. EMPLOYER RESPONDEAT SUPERIOR LIABILITY FOR CREATION OF HOSTILE WORK ENVIRONMENT

On June 26, 1998, in the cases of *Faragher v. Boca Raton*, —— U.S. ——, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), and *Burlington Industries, Inc. v. Ellerth*, —— U.S. ——, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998), the Supreme Court announced that an employer "is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor." *Faragher*, —— U.S. ——, ——, 118 S.Ct. 2275, 2278–79. The Court held that the supervisor must have immediate or successively higher authority over the employee and that where the supervisor does not take a tangible employment action against the subordinate, the employer remains vicariously liable but may assert an affirmative defense. *Id.* That affirmative defense is composed of two necessary elements:

> (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

*Id.* While this framework at first appears straightforward, a closer examination reveals a number of issues left unresolved by the Supreme Court.

It is not always clear when a co-worker becomes a supervisor. The first issue raised under the facts as they exist in the instant action is whether Pat Martin was in fact the plaintiff's supervisor. The Court did not attempt in either *Faragher* or *Burlington Industries* to define what constitutes a "supervisor" other than to say that a supervisor has immediate or successively higher authority over the employee. *Burlington Industries*, 118 S.Ct. at 2270. In both *Faragher* and *Burlington Industries*, the supervisors at issue had some clear authority over the harassed employees. In *Faragher* the supervisors were responsible for the plaintiff's daily assignments, supervising her work, and supervising her fitness training. —— U.S. at ——, 118 S.Ct. at 2279. In *Burlington Industries* the supervisor was a mid-level manager who had authority to hire and promote employees subject to the approval of his supervisor. —— U.S. ——, 118 S.Ct. 2257. Whether Pat Martin was Becky Corcoran's supervisor is an issue of fact and based on the record before the court there is a genuine dispute over this fact. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Martin was an assistant manager of the entire restaurant and the plaintiff was the manager of the dining room. The record indicates that Martin's and Corcoran's shifts involved some degree of cross-over, and plaintiff puts forth facts suggesting that Martin took actions during the course of his employment that could only be taken by one acting in a supervisory role.[4] Construing the facts in the light most favorable to the plaintiff and thereby assuming that Martin was Ms. Corcoran's supervisor, it then becomes necessary under the *Faragher–Burlington Industries* framework to determine whether the affirmative defense to vicarious liability is available to the corporate defendants in this matter.

The *Faragher–Burlington Industries* affirmative defense is not available to employers where a supervisor took a tangible

---

3. The court in *Alvarado* noted that the naming requirement serves two purposes: (1) to put the named party on notice of a claim against it before a lawsuit is filed; (2) allow that party to resolve the claim by conciliation and voluntary compliance. 848 F.2d 457 (4th Cir.1988). It was also important to the *Alvarado* court that the plaintiff completed the EEOC charge at issue without the assistance of counsel or other qualified person and that the interests of the school board were represented at each stage of the complaint process. In the instant action, Mr. Martin did not retain his own counsel until well after the commencement of this suit. He could not have known that he was subject to suit in his individual capacity until Ms. Corcoran brought this action.

4. For example, plaintiff contends that Martin discussed the work performance of a Shoney's employee with her and argues that only one in a supervisory role would have cause to review the performance of an employee.

employment action against the complainant. *Burlington Industries*, —— U.S. at ——, 118 S.Ct. at 2267. In order, therefore, to avail themselves of the affirmative defense, the defendants must establish that "a supervisor" did not take a tangible employment action against the subordinate. *Id.* In the case at bar, the plaintiff was dismissed from her job and this action, if done without justification, would appear to constitute a tangible employment action under most any definition. Ms. Corcoran, however, was not fired by Mr. Martin but was dismissed by another supervisor. In other words, the plaintiff was dismissed by some one other than the supervisor alleged to have created the hostile work environment. Though the Supreme Court does not explicitly state that the tangible employment action required to disable the affirmative defense must be taken by the harassing supervisor, that is the most logical interpretation of the Court's discussion of the matter. Even though a tangible employment action was taken against Ms. Corcoran, because it was not taken by the supervisor who allegedly created the hostile work environment, the employer defendants in this case may try to avoid liability by invoking the *Faragher–Burlington Industries* affirmative defense.

■ Having established that the employer defendants may attempt to avail themselves of the affirmative defense, it must be determined whether they may do so at this stage in the litigation. As previously discussed, the defense is comprised of two elements. First, the employer must have exercised reasonable care to prevent and promptly correct any sexually harassing behavior. *Burlington Industries*, —— U.S. at ——, 118 S.Ct. at 2267. Second, the plaintiff employee must have unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. *Id.* Considering the first prong of the defense, the plaintiff informed her employer about the offending conduct on February 10, 1995. Ms. Corcoran's supervisors took immediate action to become fully informed about the conduct and took steps to minimize any contact between Ms. Corcoran and Mr. Martin. After conducting an investigation, the general manager of Shoney's confronted Mr. Martin with the allegations on February 17, 1995 and Mr. Martin resigned two hours later. Short of immediately confronting Mr. Martin armed only with the plaintiff's allegations, the employer's actions following the complaint were an appropriate attempt to correct the allegedly sexually harassing behavior. In an effort to prevent sexual harassment, Shoney's has an express policy prohibiting such activity in the workplace and this policy is posted in all Shoney's locations. The facts before the court, therefore, indicate that the defendant employers have met their burden under the first prong of the affirmative defense.

■ The second prong of the affirmative defense is somewhat of an anathema to this court. Neither of the Supreme Court's twin opinions attempt to provide guidance as to what constitutes an unreasonable failure to take advantage of any preventive or correction opportunities or to otherwise avoid harm. In the case at hand, the plaintiff alleges that Pat Martin first began making unwanted sexual remarks in June 1994 and that by February 1995 Martin's behavior toward the plaintiff escalated to the point where he exposed his genitals to her and forced the plaintiff to place her hand on his genitals. The plaintiff reported this conduct on February 10, 1995. It appears from the record that Mr. Martin did not engage in offending behavior between June 1994 and February 1995. The question then becomes whether Ms. Corcoran's February 10, 1995 report was unreasonably late. Phrased differently, was Ms. Corcoran's failure to take action following the June 1994 remarks and decision to then wait until the February 1995 incidents before taking action reasonable? Though unwanted sexual remarks have no place in the work environment, it is far from uncommon for those subjected to such remarks to ignore them when they are first made. In Ms. Corcoran's case, the facts indicate that isolated remarks were made and that for a long period nothing further occurred. The court cannot say that it was unreasonable for Ms. Corcoran to remain silent during this period. When, however, the sexual harassment became virtually impossible to ignore, Ms. Corcoran took imme-

diate action. Considering the totality of the circumstances, Ms. Corcoran's actions do not make it possible for the defendants to successfully establish the second prong of the affirmative defense. The defense as a whole can be of no assistance in the corporate defendants' attempt to avoid vicarious liability. Because the facts before the court render the affirmative defense inapplicable, Shoney's and Triple H Properties remain vicariously liable for the creation of a hostile work environment by Pat Martin and summary judgment on this claim is inappropriate.

## VI. RETALIATION CLAIM

Ms. Corcoran also brought a claim for retaliatory discharge against Pat Martin and the employer defendants. Mr. Martin moved for summary judgment as a matter of law on this claim and the plaintiff conceded that this claim was not proper to bring against him given the facts of the case. Summary judgment is, therefore, granted in favor of Mr. Martin on the retaliation claim. As for the employer defendants, the Magistrate Judge found that for summary judgment purposes the plaintiff met her burden. Defendants Shoney's and Triple H Properties object to this finding, arguing that though the plaintiff has established a *prima facie* case of retaliatory discharge, the defendants have rebutted this with legitimate nonretaliatory reasons for the adverse action. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985).

To prevail in a retaliatory discharge case, a plaintiff must establish a *prima facie* case consisting of three parts:

(1) that she engaged in protected activity;

(2) that the employer took adverse employment action against her;

(3) that a causal connection existed between the protected activity and the adverse action.

*Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985).

Once a plaintiff has established a *prima facie* case, the employer defendant may rebut the case by putting forth legitimate nonretaliatory reasons for the adverse action. *Id.* If the employer is successful in this endeavor, the plaintiff must then establish by preponderance of the evidence that the proffered reasons are pretextual. *Id.* For purposes of the summary judgment motion the employer defendants conceded that the plaintiff had established a *prima facie* case of retaliatory discharge. This concession is hardly remarkable given the Fourth Circuit's clear holding that when an employee is fired after the employer became aware that she had filed a discrimination charge, the employee has met the *prima facie* requirement that she prove a causal connection between the protected activity and her discharge. *Williams v. Cerberonics,* 871 F.2d 452 (4th Cir.1989). On February 10, 1995 the plaintiff complained of Martin's actions to her employers, on February 27, 1995 she met with an attorney for the first time, on February 28, 1995 the attorney contacted plaintiff's employers and on March 1, 1995 the plaintiff was dismissed. In an effort to rebut this *prima facie* case, the defendants cite only three specific dates on which the plaintiff was late to work or was absent from a scheduled work shift. These incidents all occurred after the plaintiff reported Mr. Martin's alleged harassment and are the only dates specifically referred to in the course of plaintiff's fifteen year career with Shoney's. Once, however, the employer has offered what appear to be legitimate nondiscriminatory reasons for the dismissal, the plaintiff must establish that "but for" his filing of the harassment charge, he would not have been fired. *Ross v. Communications Satellite Corp.,* 759 F.2d 355 (1985). Plaintiff offered explanations for each incident and giving the plaintiff the benefit of all conflicting inferences, there remains a genuine factual question that "but for" plaintiff's filing of an EEOC charge, she would not have been fired.[5] The court is, therefore, precluded

---

5. On February 24, 1995 plaintiff states that she was ill and informed Shoney's management of this fact. On February 26, 1995 plaintiff states that she worked an eight hour shift and admits to

being late, but argues that Shoney's tolerates a reasonable degree of tardiness with its other employees. On February 28, 1995 plaintiff asserts that she had previously asked for the day off to

from granting summary judgment in favor of the employer defendants on plaintiff's retaliation claim and adopts the Magistrate's report and recommendation on this matter.

## VII. CONCLUSION

For the reasons set forth above, summary judgment is granted in favor of defendant Martin on plaintiff's hostile work environment claim and retaliation claim. Summary judgment is denied to defendants Shoney's and Triple H on both the hostile work environment and retaliation claims. This court's grant of summary judgment for Mr. Martin on plaintiff's Title VII claims should not be interpreted as a condonation of his actions. If proven to be true, Martin's behavior is absolutely inexcusable.

An appropriate Order shall this day issue.

## ORDER

For the reasons stated in the accompanying Memorandum Opinion, it is this day

ADJUDGED AND ORDERED

as follows:

(1) Defendant Martin's motion for summary judgment as to plaintiff's hostile work environment claim and retaliation claim shall be, and it hereby is, GRANTED.

(2) Defendants Shoney's and Triple H Properties' motion for summary judgment as to plaintiff's hostile work environment claim and retaliation claim shall be, and it hereby is, DENIED.

The Clerk of the Court is hereby directed to send a certified copy of this Order to all counsel of record and to Magistrate Judge Crigler.

care for her child and had received permission to be absent.