30 F.3d 1350
 65 Fair Empl.Prac.Cas. (BNA) 1317, 29
Fed.R.Serv.3d 1557
Amy Lytton VIRGO, Plaintiff-Appellee.
v.
RIVIERA BEACH ASSOCIATES, LTD., d/b/a Sheraton Ocean Inn,
L.H. Hardaway, Jr., Main Street Properties, Inc.,
Defendants-Appellants,
Imperial Associates, Inc., et al., Defendants.
 No. 93-4032.
 United States Court of Appeals,
Eleventh Circuit.
 Sept. 1, 1994.
 
 Melissa A. Tenenbaum, Kurt R. Klaus, Jr., Miami, FL, for appellants.
 Joseph L. Mannikko, Frasier & Mannikko, Stuart, FL, for appellee.
 Jennifer S. Goldstein, EEOC, Washington, DC, for amicus--EEOC.
 Appeal from the United States District Court for the Southern District of Florida.
 Before COX and CARNES, Circuit Judges, and WOOD*, Senior Circuit Judge.
 HARLINGTON WOOD, Senior Circuit Judge:
 
 
 1
 In 1985, L.H. Hardaway, Jr. and Imperial Associates, Inc. became limited partners in Riviera Beach Associates, Inc. ("Riviera Beach"), a partnership specifically formed to own the Sheraton Ocean Inn located on the east coast of Florida, north of Miami. Riviera Beach contracted with Sterling Group, Inc. to manage the hotel. Hugh Jones and Jerry Markert, the president and vice-president of Sterling Group respectively, were the two individuals primarily involved in managing the hotel.
 
 
 2
 In June 1986, Plaintiff Amy Virgo began working as a sales representative at the Sheraton Ocean Inn where she quickly moved up the corporate ladder. Markert promoted Virgo to assistant sales manager in July 1986, assistant general manager on August 13, 1986, and to acting general manager on August 30, 1986. In September 1986, Jones advanced Virgo to the position of general manager.
 
 
 3
 Over the course of Virgo's employment at the Inn, she was sexually harassed by Jones. The evidence and testimony introduced at trial described a pattern of conduct in which Jones touched her sexually without her permission, and also told her she would have to engage in sexual intercourse with him or else he would write disparaging reviews concerning her job performance. Virgo succumbed to the pressure and subsequently engaged in sexual intercourse with Jones on four different occasions. Eventually, in March 1987, Virgo voluntarily resigned on account of Jones' sexual harassment. On May 7, 1987, Virgo filed a charge of discrimination with the Equal Employment Opportunity Commission and the Florida Commission on Human Rights. The EEOC issued Virgo a Notice of Right to Sue on January 10, 1990.
 
 I. Procedural Background
 
 4
 Plaintiff Amy Virgo sued Defendants Riviera Beach Associates, Ltd., d/b/a Sheraton Ocean Inn, L.H. Hardaway, Jr., Main Street Properties, Inc. ("Main Street"),[1] Sterling Group, and Hugh Jones[2] based on Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e et seq. and added several pendant state law claims. Virgo's complaint consists of four counts. Count I names all defendants and alleges quid pro quo sexual harassment and constructive discharge in violation of Title VII. Count II alleges that Riviera Beach and its partners, L.H. Hardaway, Jr. and Main Street Properties, are liable for negligently retaining and supervising Sterling Group. Counts III and IV respectively allege the torts of invasion of privacy and battery only against Sterling Group. After counsel for Sterling Group, Inc. failed to appear in court, the district court entered a default judgment on counts II, III, and IV, of the complaint against that corporation on April 28, 1992 with damages to be determined at trial.
 
 
 5
 Only Riviera Beach appeared as a defendant at trial. The parties tried the Title VII count to the bench and the three common law tort claims simultaneously to a jury. After Virgo presented her case-in-chief, the district court entered judgment as a matter of law in favor of Riviera Beach on count II. At the conclusion of trial, the jury returned a verdict against Sterling Group on counts III and IV, and awarded $1,081,605.00 in damages. The district court held in favor of Virgo on count I.
 
 
 6
 On November 17, 1992, the district court issued a memorandum opinion entitled "Order and Memorandum Opinion As To Count I For Title VII Employment Discrimination" and awarded Virgo damages in the amount of $173,460.00 in back pay, $247,210.00 in front pay, for an aggregate amount of $420,670.00 in damages, and awarded reasonable attorney's fees under 42 U.S.C. Sec. 2000e-5(k). Included in the memorandum opinion the district court stated, "At the close of all the evidence, the jury returned a verdict in Virgo's favor against Sterling Group, Inc. in the amount of $1,081,605.00 on Counts II, III and IV." We assume that the court meant to refer only to counts III and IV because Sterling Group was not named as a defendant in count II for negligent retention.
 
 
 7
 On November 19, 1992, the district court entered judgment on count I of the complaint in favor of Virgo and on count II in favor of Riviera Beach, but made no mention of the jury's verdict against Sterling Group on counts III and IV.
 
 
 8
 Under Fed.R.Civ.P. 59, Appellants filed a motion for new trial on December 4, 1992 and a supplemental motion for new trial on December 7. After the district court denied these motions on December 9 and 15 respectively, the Appellants filed their notice of appeal on December 31, 1992 purporting to appeal from the November 19 judgment.
 
 
 9
 Because the district court had not entered judgment against Sterling Group on counts III and IV, on February 26, 1993 and March 15, 1993 Virgo filed motions requesting the court to do so. The court did not respond to these motions, so plaintiff, on April 12, 1993, filed a motion requesting the court to enter final judgment or to clarify the November 19 judgment regarding the jury's verdict in favor of Virgo. The district court granted this motion on May 7, 1993, and entered judgment against the defendants in favor of Virgo on counts III and IV, in the amount of $1,081,605. Because the plaintiff's complaint does not contain a claim against Riviera Beach on counts III and IV, the parties submitted an agreed motion to strike any reference to Riviera Beach regarding these counts from the amended judgment. The district judge granted this motion and issued a second amended judgment on July 20, 1993. Defendants did not file a new notice of appeal after the district court entered either of the amended final judgments.
 
 II. Appellate Jurisdiction
 
 10
 Before addressing the substantive issues presented by this appeal, we must first decide whether we have jurisdiction to do so. Jurisdiction in this court is premised on 28 U.S.C. Sec. 1291. The complicated procedural history of this case presents us with a difficult jurisdictional question. For appellate jurisdiction under Sec. 1291 to be invoked the appeal must be from a final judgment and "the requirements for an effective judgment generally must be satisfied." Bankers Trust Co. v. Mallis, 435 U.S. 381, 384, 98 S.Ct. 1117, 1119, 55 L.Ed.2d 357 (1978).
 
 A. Timeliness of Notice of Appeal
 
 11
 Federal Rule of Appellate Procedure 4(a)(1) gives the parties thirty days in which to file a notice of appeal after entry of the judgment or order.[3] Virgo asserts that Riviera Beach has not complied with this rule and argues that we should dismiss this appeal.
 
 
 12
 On December 31, 1992, Riviera Beach filed its notice of appeal from the November 19 "Final Judgment." Assuming that the November 19 judgment is final and appealable, Virgo argues that Riviera Beach did not file a timely notice of appeal because more than thirty days elapsed between November 19 and December 31. However, under App.R. 4(a)(4), where a party files a "timely motion [for a new trial], the time for appeal for all parties runs from the entry of the order disposing of the last such motion outstanding." The question we must resolve is whether the defendants filed a timely motion for new trial thus tolling the permissible time for appeal.
 
 
 13
 Federal Rule of Civil Procedure 59(b) requires a motion for a new trial to be served no later than ten days after the entry of the judgment. See Great American Ins. Co. v. Rush, 670 F.2d 995, 996 (11th Cir.1982). Under Federal Rule of Civil Procedure 6(a) "[w]hen the period of time prescribed or allowed is less than 11 days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation."
 
 
 14
 Calculating the number of days that elapsed between November 19, and December 4, 1992, we determine that Riviera Beach's notice of appeal was timely served. In 1992 four Saturdays and Sundays (November 21, 22, 28, and 29) and one legal holiday (November 26) fell between the pertinent dates. After these dates are subtracted from the computation under rule 6, exactly ten days elapsed between the date the court entered judgment on counts I and II, and the date of service of the motion for new trial. Therefore, the time for beginning the appeals period was tolled under App. Rule 4(a)(4) until December 15, 1992, the date the district court disposed of the motion for new trial. Therefore the December 31, 1992, notice of appeal was filed within the thirty-day statutory period. This analysis assumes the November 19, 1992, order was a final and appealable order, but it was not. The December 31, 1992 notice of appeal, though timely filed, was ineffective to give us jurisdiction as that judgment did not dispose of the entire case.
 
 
 15
 Litigants may appeal from a district court's order only if it is final or otherwise permitted by the Federal Rules of Civil Procedure. See Fed.R.Civ.P. 54. A judgment is final if it disposes of all of the claims with regard to all of the parties. There appears to be a final appealable order in November 1992. On November 17 the district court issued a memorandum opinion in which it rendered judgment in favor of Virgo on count I, noted that count II had previously been decided in favor of Riviera Beach, and noted that the jury had assessed damages against Sterling on counts II, III, and IV. In sum, all of the claims had been decided as to all of the parties effectively ending the litigation on the merits. See FirsTier Mortgage Co. v. Investors Mortgage Ins. Co., 498 U.S. 269, 273-74, 111 S.Ct. 648, 651-52, 112 L.Ed.2d 743 (1991).
 
 
 16
 The problem lies in the November 19 order entering judgment only on counts I and II. Normally the time for appeal does not begin to run until the judgment is formally entered by the district court in compliance with Federal Rules of Civil Procedure 58 and 79(a). Fed.R.App.P. 4(a)(7). Under those rules an order, even one that ends the litigation, is not effective until set forth in a separate document (Rule 58) and entered on the docket (Rule 79(a)). The separate document requirement of Rule 58 is intended to provide a bright-line for litigants and courts to identify when the period for appeals begins. United States v. Indrelunas, 411 U.S. 216, 220-22, 93 S.Ct. 1562, 1564-65, 36 L.Ed.2d 202 (1973) (per curiam). The rule "must be mechanically applied in order to avoid new uncertainties as to the date on which judgment is entered." Id. at 222, 93 S.Ct. at 1565.[4]
 
 
 17
 The "final judgment" entered by the district court on November 19 disposed of only two of the four counts. Because this order did not enter judgment on the counts against Sterling Group, the period for appeal did not begin to run. The district court did not enter a final appealable judgment disposing of all counts of the complaint as to all parties until May 7, 1993. On this date the thirty-day period for appeal began, but Riviera Beach did not file a new notice of appeal. The question then becomes whether the December 31, 1992 notice of appeal, although filed prematurely, should be considered timely filed.
 
 
 18
 B. Federal Rule of Appellate Procedure 4(a)(2)
 
 
 19
 Although not raised by Riviera Beach, App. Rule (4)(a)(2) may apply and, if it does, then Riviera Beach's notice of appeal would be considered timely. Appellate Rule 4(a)(2) states: "A notice of appeal filed after the court announces a decision or order but before the entry of the judgment or order is treated as filed on the date of and after the entry." Applying the rule to this case, we find that the premature appeal authorizes us to exercise jurisdiction over the substantive issues.
 
 
 20
 The district court announced its decision regarding all counts and all parties on November 17, 1992. Riviera Beach then filed a notice of appeal on December 31, 1992, approximately four months before the district court entered a separate appealable judgment on May 7, 1993. The November 17, 1992 opinion announced a decision that would have been appealable if immediately followed by the entry of judgment on all counts of the complaint. Under App. Rule 4(a)(2) we are required to treat defendant's premature notice of appeal as filed on the date the district court entered a final appealable judgment on all counts of the complaint, May 7, 1993. See FirsTier Mortgage, 498 U.S. at 276, 111 S.Ct. at 653. Therefore we have jurisdiction to review the substantive issues raised by Riviera Beach.
 
 
 21
 Virgo argues that we must follow United States v. Taylor, 632 F.2d 530 (5th Cir.1980), and suggests that Jetco Electronic Industries v. Gardiner, 473 F.2d 1228 (5th Cir.1973),[5] as clarified by Robinson v. Tanner, 798 F.2d 1378 (11th Cir.1986), cert. denied, 481 U.S. 1039, 107 S.Ct. 1979, 95 L.Ed.2d 819 (1987), does not apply. We find that neither of these cases control the outcome of this case.
 
 
 22
 In Taylor the appellants attempted to appeal from an order denying their motion to join a party and granting the appellee's motion to dismiss the counterclaim. After the notice of appeal was filed, the district court dismissed the entire action. On appeal, the court held that a subsequent final judgment does not validate a premature notice of appeal filed from an interlocutory order that is not immediately appealable. Id. at 531. Jetco established an exception to Rule 54(b) by "allowing a subsequent judgment to cure a premature notice of appeal only when the notice is from an otherwise final order dismissing a claim or party." Robinson, 798 F.2d at 1383. In Jetco and its progeny the appellants filed premature notices of appeal from judgments "adjudicating either fewer than all the claims in the case or the rights and liabilities of fewer than all the parties." Robinson, 798 F.2d at 1382. Neither Taylor nor Jetco apply to our situation. Here Riviera Beach filed its notice of appeal after the district court and jury decided all counts of the complaint but before the judgment was formally entered on all counts. The procedural nuances present here fall directly within the language of Fed.R.Civ.P. 4(a)(2) and we therefore have jurisdiction to resolve the substantive issues raised by Riviera Beach.
 
 III. Analysis
 
 23
 Riviera Beach raises the following procedural and substantive issues for our review: (1) whether the district court erred in substituting Main Street for Imperial Associates during trial; (2) whether the district court properly exercised jurisdiction under Title VII; (3) whether the district court properly held Riviera Beach and its partners liable for quid pro quo sexual harassment; (4) whether Virgo was constructively discharged; and (5) whether the district court correctly computed the damages under Title VII. We review each of these arguments in turn.
 
 A. Substitution of Parties
 
 24
 The complaint originally named Hardaway and Imperial Associates as the general partners in Riviera Beach, and Appellants admitted this statement in their answer. But according to the deposition testimony of Hardaway taken approximately one month before trial, during the course of litigation Imperial Associates went out of business and Main Street Properties purchased all of its assets. On this basis, three days after receiving the deposition transcript, on October 2, 1992, Virgo moved the court to substitute Main Street Properties for Imperial Associates under Fed.R.Civ.P. 25(c). Meanwhile, the trial began on October 5, 1992. After Appellants failed to reply in writing or present any evidence to the contrary, on October 15, 1992, the district court substituted Main Street as a defendant for Imperial Associates over Appellant's oral objection that "documentary evidence [is] needed to substitute one legal entity from another ... the word of a professed shareholder or interest holder ... is [not] sufficient to bring in another group who we don't even know...." Appellants renew this objection and additionally argue that substitution was improper because, as a general rule, the failure to name a party in the EEOC complaint precludes a future civil action against that party. Equal Employment Opportunity Comm'n v. MacMillan Bloedel Containers, Inc., 503 F.2d 1086, 1092 (6th Cir.1974). We review this substitution under an abuse of discretion standard. National Independent Theatre Exhibitors, Inc. v. Buena Vista Distribution Co., 748 F.2d 602, 610 (11th Cir.1984), cert. denied, 471 U.S. 1056, 105 S.Ct. 2120, 85 L.Ed.2d 484 (1985).
 
 1. Transfer of Interest
 
 25
 Rule 25(c) authorizes a substitution of parties after a transfer of interest has occurred. The complaint named Hardaway and Imperial Associates as defendants in their capacity as general partners in Riviera Beach Associates. According to Hardaway's deposition testimony, Main Street Properties purchased all of the assets of Imperial Associates during the pendency of this litigation. Hardaway owns the majority of shares in Hardaway Group, Inc., which in turn owns Main Street, and Hardaway currently is the president and chairman of Main Street. Clearly these closely held corporations are intimately related to one another. Sworn testimony from the president of the company is a sufficient basis for substituting Main Street for Imperial Associates.
 
 
 26
 Transferring assets of a corporation that is engaged in litigation and its effect on the lawsuit is governed by state law. In Defense Supplies Corp. v. Lawrence Warehouse Co., 336 U.S. 631, 69 S.Ct. 762, 93 L.Ed. 931 (1949), the Supreme Court stated:
 
 
 27
 [A] time-honored feature of the corporate device is that a corporate entity may be utterly dead for most purposes, yet have enough life remaining to litigate its actions. All that is necessary is a statute so providing. Unless the statutory terms are observed, however, the consequences of total dissolution attach, and ... the actions abate.
 
 
 28
 Id. at 634-35, 69 S.Ct. at 763-64 (citations omitted). Neither the district court nor the parties examined the effect of state law. Imperial Associates was a Tennessee corporation, but the state of incorporation for Main Street does not appear in the record. If Main Street is a corporation of another state, this might present a choice of law question. On the surface this appears to be a problem and in other circumstances we might reverse only as to Main Street's liability to allow the district court to address these issues. However, under these facts a reversal would not impact on the outcome of this case.
 
 
 29
 If we were to reverse the judgment as to Main Street as an individual defendant, it would still be jointly and severally liable as a general partner of Riviera Beach. Riviera Beach received proper notice and appeared at trial. The fact that the composition of the partnership changed during the course of litigation does not affect the liability of the partnership itself.
 
 2. Named Parties in the EEOC Proceedings
 
 30
 Appellants also contend that the failure to name either Hardaway or Main Street as defendants in the EEOC proceedings precludes a later civil lawsuit against them on the grounds stated in the EEOC complaint. Generally speaking, the EEOC is charged with the task of investigating allegations of civil discrimination and harassment in the employment context and determining whether there is any reason to believe the allegations are true. Under 42 U.S.C. Sec. 2000e-5, a person who wants to file a lawsuit under Title VII must first file a charge with the Equal Employment Opportunity Commission alleging a Title VII violation and exhaust all remedies provided by the EEOC. If the conciliation efforts are unsuccessful, the EEOC will inform the parties and issue a letter authorizing the complainant to file a Title VII suit.
 
 
 31
 Ordinarily, a party not named in the EEOC charge cannot be sued in a subsequent civil action. Schnellbaecher v. Baskin Clothing Co., 887 F.2d 124, 126 (7th Cir.1989). This naming requirement serves to notify the charged party of the allegations and allows the party an opportunity to participate in conciliation and voluntarily comply with the requirements of Title VII. Id. at 127. However, courts liberally construe this requirement. Alvarado v. Board of Trustees, 848 F.2d 457, 460 (4th Cir.1988); Terrell v. United States Pipe & Foundry Co., 644 F.2d 1112, 1123 (5th Cir. Unit B 1981), cert. denied, 456 U.S. 972, 102 S.Ct. 2234, 72 L.Ed.2d 845 (1982). Where the purposes of the Act are fulfilled, a party unnamed in the EEOC charge may be subjected to the jurisdiction of federal courts. Eggleston v. Chicago Journeymen Plumbers' Local 130, 657 F.2d 890, 905 (7th Cir.1981), cert. denied, 455 U.S. 1017, 102 S.Ct. 1710, 72 L.Ed.2d 134 (1982).
 
 
 32
 In order to determine whether the purposes of Title VII are met, courts do not apply a rigid test but instead look to several factors including: (1) the similarity of interest between the named party and the unnamed party; (2) whether the plaintiff could have ascertained the identity of the unnamed party at the time the EEOC charge was filed; (3) whether the unnamed parties received adequate notice of the charges; (4) whether the unnamed parties had an adequate opportunity to participate in the reconciliation process; and (5) whether the unnamed party actually was prejudiced by its exclusion from the EEOC proceedings. Id. at 906-07; Glus v. G.C. Murphy Co., 562 F.2d 880, 888 (3d Cir.1977). Other factors may be relevant depending on the specific facts of the case.
 
 
 33
 The notice and conciliation purposes of the Act are satisfied in this instance. When Virgo filed the action with the EEOC she named only Sterling Group and Sheraton Ocean Inn. Sheraton Ocean Inn is the name under which Riviera Beach transacts business. We agree with the district court that Riviera Beach was a closely related entity since it is the sole owner of the Sheraton Ocean Inn, and should be held to have received notice. Hardaway and Main Street, as general partners in the Riviera Beach Limited Partnership, are functionally identical to the partnership and should not be protected by the naming requirement. Alvarado, 848 F.2d at 458-59. Moreover, Hardaway testified that he received actual notice of the charges from Jones immediately after Virgo filed the EEOC charge. Thus Riviera Beach knew of the pending EEOC charges and had an opportunity to participate in the conciliation process, thus satisfying the purposes of Title VII.
 
 
 34
 Obviously Virgo could not have named Main Street in the EEOC complaint because it did not yet exist. Imperial, Main Street's predecessor in interest, received notice as a partner in Riviera Beach, and this notice is imputed to Main Street because when they purchased Imperial's assets, they also assumed Imperial's liabilities. We find no error here.
 
 B. Jurisdiction Under Title VII
 
 35
 Title VII of the Civil Rights Act of 1964 prohibits many different forms of discrimination including discrimination on the basis of sex. 42 U.S.C. Sec. 2000e-2. Before a district court may entertain a sexual harassment Title VII claim, the harassing actor must be an "employer" which the Act defines as an individual or firm that is "engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person...." 42 U.S.C. Sec. 2000e(b). Consistent with the purposes of the Act we interpret the term "employer" liberally. McKenzie v. Davenport-Harris Funeral Home, 834 F.2d 930, 933 (11th Cir.1987). In connection with the district court's decision that Riviera Beach is subject to Title VII liability, Riviera Beach contends that the district court erred by (1) finding that Riviera Beach and Sterling Group should be treated as joint employers for Title VII; and (2) finding that Riviera Beach and Sterling Group jointly employed fifteen or more employees. These threshold issues bear on the court's jurisdiction to decide count I. McKenzie v. Davenport-Harris Funeral Home, 834 F.2d 930, 932 (11th Cir.1987).
 
 1. Joint Employers
 
 36
 The district court held that Riviera Beach and Sterling Group jointly employed all of the employees working at the Sheraton Ocean Inn. In reaching this decision, the district court focused on the test stated in National Labor Relations Board v. Browning-Ferris Industries, 691 F.2d 1117 (3d Cir.1982):[6]The basis of the finding is simply that one employer while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer. Thus the joint employer concept recognizes that the business entities involved are in fact separate but that they share or co-determine those matters governing the essential terms and conditions of employment.
 
 
 37
 Id. at 1122 (citation omitted). Whether Riviera Beach retained sufficient control is essentially a factual question and we find the district court's conclusion to be supported by substantial evidence in the record. See Boire v. Greyhound Corp., 376 U.S. 473, 481, 84 S.Ct. 894, 899, 11 L.Ed.2d 849 (1964); Clinton's Ditch, 778 F.2d at 136.
 
 
 38
 Even though Riviera Beach contracted with Sterling Group to run the hotel, it retained significant authority to control matters at the hotel. Many clauses of the Management Agreement[7] indicate that Riviera Beach retained significant control over Sterling Group and the operation of the Sheraton Ocean Inn. Article 4 grants Sterling Group the power to run the hotel and make the day-to-day decision, but reserved for Riviera Beach the right to pay all costs of operations including the compensation of employees. Article 5 of the Management Agreement begins "all employees, including the Resident Manager, are in the employ of owner." Specifically Article 5 states:
 
 
 39
 Manager shall determine the salaries of all employees, including the Resident Manager subject to owner's approval. Manager is in no way liable to said personnel for their wages, compensation or other benefits, and owner shall indemnify and hold manager harmless from liability.... Owner shall not interfere with or give orders or instructions to personnel employed on the premises; however, Manager shall consult with Owner regarding the number and categories of supervisory and executive employees to be appointed, and the terms and conditions of such appointment. Where work permits or employment passes may be required, no application shall be made for such permits ... without prior consent of the owner, and where necessary ... or considered advisable, any such applications shall be made by the owner.
 
 
 40
 Article 5 also gives Riviera Beach "final authority and responsibility over any labor negotiations respecting employees" at the hotel. Virgo's unrefuted testimony established that Riviera Beach paid her wages, social security taxes, and insurance. Riviera Beach also paid all operation expenses including repairs, advertising, and accountant's fees. Rivas v. Federacion de Asociaciones Pencuarias, 929 F.2d 814, 821 (1st Cir.1991); Clinton's Ditch, 778 F.2d at 138-39; Ref-Chem Co. v. National Labor Relations Bd., 418 F.2d 127, 129 (5th Cir.1969). In sum, the language in the Management Agreement, and Virgo's testimony, in the absence of any contrary evidence, support the district court's finding of joint ownership. See EEOC Decision No. 71-1537, 3 FEP Cases 766, 767 (March 31, 1971) (finding owner of hotel and management company to be joint employers where owner contracted with management company, but retained approval power over the manager's hiring and discharge decisions, paid employee, and employee considered herself employed by owner.)
 
 
 41
 Citing Massey v. Emergency Assistance, Inc., 580 F.Supp. 937 (W.D.Mo.1983), Appellants raise two challenges against the district court's conclusion. First Appellants argue that the only relationship between them and Sterling Group was contractual. They fail to explain, however, how the nature of this connection affects Riviera Beach's ability and authority to control Sterling Group's employees. Second, they argue that the right to control and participate in management decisions such as labor negotiations and hiring and firing, is not the same as actually doing so, and absent proof of actual control Riviera Beach and Sterling Group cannot be found to be joint employers. They cite no authority in support of this argument. We find that actual control is a factor to be considered when deciding the "joint employer" issue, but the authority or power to control is also highly relevant. The district court found that Riviera Beach paid all costs and expenses related to all hotel employees and paid all expenses of operation. This actual exercise of authority and the retained authority described above, are a sufficient basis upon which to find Sterling Group and Riviera Beach to be joint employers.
 
 2. Number of Employees
 
 42
 According to the findings of facts stated by the district court, Riviera Beach and Sterling Group employed the statutorily required "fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." The district court found it "obvious" that Riviera Beach and Sterling Group, as joint employers, satisfied this statutory requirement. Appellants contend that Virgo failed to introduce evidence demonstrating this fact. We review this factual finding for clear error. Insurance Co. of North America v. M/V Ocean Lynx, 901 F.2d 934, 939 (11th Cir.1990), cert. denied, 498 U.S. 1025, 111 S.Ct. 675, 112 L.Ed.2d 667 (1991).
 
 
 43
 Clear error does not exist here. According to the citations to the record provided to us by Virgo, as joint employers Riviera Beach and Sterling Group employed more than fifteen employees to operate the hotel. Nine employees are specifically identified in the record, and many other positions are described including the restaurant staff, maintenance staff, housekeeper, and lounge staff. Though the text of these citations does not elaborately set forth the number of hours and days worked in 1991 or 1992, in the absence of any proof to the contrary, the district court was not wrong to assume that persons employed in these types of jobs would at a minimum satisfy the statutory requirements. The record contains an adequate and reasonable basis for the district court's finding.
 
 C. Quid Pro Quo Sexual Harassment
 
 44
 After concluding that Riviera Beach met the statutory requirements as an "employer" and could be subject to Title VII liability, the district court found Riviera Beach liable for quid pro quo sexual harassment. The prima facie elements for this cause of action that the plaintiff must prove include: (1) the employee belongs to a protected group; (2) the employee was subject to unwelcome sexual harassment; (3) the harassment complained of was based on sex; and (4) the employee's reaction to the unwelcome behavior affected tangible aspects of the employee's compensation, or terms, conditions or privileges of employment. Sparks v. Pilot Freight Carriers, 830 F.2d 1554, 1557 (11th Cir.1987). On appeal Appellants do not question whether Virgo proved these elements. Instead Appellants argue that Virgo failed to (1) prove that an agency relationship existed between Riviera Beach and Sterling Group, or (2) introduce sufficient evidence demonstrating quid pro quo sexual harassment because Jones never testified.
 
 1. Agency Relationship
 
 45
 In order to hold Hardaway and Main Street liable for the actions of Jones, three conditions must be met: Sterling Group must be liable for Jones' actions; Riviera Beach must be liable for the actions of Sterling Group; and Hardaway and Main Street must be liable as partners of Riviera Beach. The thrust of Appellants' argument seems to focus on the second and third relationships. They argue that Riviera Beach did not actually exercise any control over Sterling Group or any of the employees at the hotel even though under the Management Agreement it reserved many supervisory and fiscal powers. Specifically, Appellants contend that Virgo's unrebutted testimony that she was paid by Riviera Beach is insufficient to establish actual control of Sterling Group or that an agency relationship existed. Second, Appellants argue that Hardaway cannot be held individually responsible for Jones' actions.
 
 
 46
 Agency principles are applicable to situations where courts must determine the extent of a corporation's Title VII liability. Meritor Sav. Bank v. Vinson, 477 U.S. 57, 72, 106 S.Ct. 2399, 2408, 91 L.Ed.2d 49 (1986). The language of the Management Agreement specifically describes Sterling Group as an agent of Riviera Beach:
 
 ARTICLE 1--PREMISES
 
 47
 Owner hereby engages Manager [Sterling Group] as its sole and exclusive agent to supervise and direct, for and at the expense of [Riviera Beach], the management and operation of the [Sheraton Ocean Inn].
 
 
 48
 . . . . .
 
 ARTICLE 5--PERSONNEL
 
 49
 Manager [Sterling Group], as agent for owner [Riviera Beach], shall hire, supervise, direct the work of, discharge, and determine the compensation and other benefits of all personnel working on the premises. Manager is to be the sole judge of the fitness and qualifications of such personnel and is vested with absolute discretion in the hiring, supervision, direction, discharging and determination of the course of their employment in the operation of the premises.
 
 
 50
 Management Agreement (emphasis added). These two provisions clearly describe Sterling Group as an agent acting on behalf of Riviera Beach when managing the premises and handling personnel. Appellants do not seriously contest this conclusion. In spite of this express agency created by the Management Agreement, Appellants suggest that Sterling Group cannot be treated as an agent because they did not actually exercise any powers. Neither of the cases Appellants cite in support, Focus Inv. Assoc. v. American Title Ins., 797 F.Supp. 109 (D.R.I.1992), aff'd in part and vacated in part, 992 F.2d 1231 (1st Cir.1993); Magnuson v. Peak Technical Serv. Inc., 808 F.Supp. 500 (E.D.Va.1992), are relevant here where an expressed agency existed. Just because Riviera Beach did not choose to fully exercise its rights under the Management Agreement, does not mean it can escape its legal responsibilities as a principal to Sterling Group.
 
 
 51
 Because Riviera Beach is responsible for the acts of Sterling Group, Hardaway, as a general partner of Riviera Beach Associates, is also individually liable for Jones' sexual harassment of Virgo under Florida partnership law. A general partner in a Florida limited partnership is liable in the same manner as a partner in a general partnership. Fla.Stat. Sec. 620.125. Further, Florida general partnership law holds all partners jointly and severally liable for partnership liabilities for wrongful acts or breaches of trust. Fla.Stat. Sec. 620.63. Appellants present no reason why these statutory provisions are not applicable in this instance. Accordingly, the district court properly held Hardaway liable under Title VII for Jones' sexual harassment of Virgo.
 
 2. Sufficiency of the Evidence
 
 52
 Quid pro quo sexual harassment occurs when an employer changes an employee's conditions of employment because of their refusal to submit to sexual demands. Steele v. Offshore Shipbuilding, Inc., 867 F.2d 1311, 1315 (11th Cir.1989). The district judge relied on Virgo's unrebutted testimony that after she rebuffed Jones' sexual demands, he began spreading rumors that she used cocaine and had engaged in sex with hotel guests. Appellants complain that "the [c]ourt's ruling is ultimately based upon the appellee's hearsay claims, unrebutted by the only person who could defend against them: the harasser himself." In essence, Appellants argue that the court erred by deciding the case based on the only evidence before it: Virgo's testimony. This argument is meritless. Certainly Jones' testimony about the incident would have been probative and useful had it been introduced during trial, but neither party called him as a witness.[8] It is unreasonable to now claim that the district court erred by relying on the only evidence before it.[9]
 
 D. Constructive Discharge
 
 53
 A claim for constructive discharge requires the employee to demonstrate that the work environment and conditions of employment were so unbearable that a reasonable person in that person's position would be compelled to resign. Derr v. Gulf Oil Corp., 796 F.2d 340, 344 (10th Cir.1986); Young v. Southwestern Sav. & Loan Ass'n, 509 F.2d 140, 144 (5th Cir.1975). Appellants challenge the district court's factual determination, essentially questioning whether a reasonable person would have resigned under these circumstances rather than choose another course of action.
 
 
 54
 The district court's conclusion that Virgo was constructively discharged is not clearly erroneous. Steele, 867 F.2d at 1317. At trial Virgo testified that during her nine months of employment at the hotel, she consistently rejected Jones' repeated sexual advances, submitting only when she was threatened with losing her job. In an effort to alleviate the problem short of resigning, Virgo testified that she attempted to notify several individuals about the harassment. She called Weldon White (Hardaway's attorney), Jones' wife, and Tom Ford (a major investor). When these alternatives did not resolve the problem, she resigned from her employment at the hotel. Appellants argue that calling these individuals was not enough and that Virgo should have been required to file a formal complaint. This contention, however, does not leave us with a "definite and firm impression that a mistake has been made." American Nat. Bank v. Federal Deposit Ins. Corp., 710 F.2d 1528, 1534 (11th Cir.1983). No formal procedure for dealing with employees' grievances was shown to exist and the steps taken by Virgo could be accepted as reasonable by the district court.
 
 E. Damages
 
 55
 "The purpose of Title VII relief is to 'make whole' victims of unlawful discrimination. To accomplish this purpose, the statute 'vests broad equitable discretion in the federal courts,' to fashion the most complete relief possible." Weaver v. Casa Gallardo, Inc., 922 F.2d 1515, 1526 (11th Cir.1991) (citations omitted). In exercising this discretion the district court awarded Virgo back pay in the amount of $173,460.00 and front pay in the amount of $247,210.00. Appropriately, we review the award of damages in a Title VII case for an abuse of discretion. Equal Employment Opportunity Comm'n v. Guardian Pools, Inc., 828 F.2d 1507, 1511 (11th Cir.1987).
 
 
 56
 Appellants concede that if they are liable under Title VII, Virgo is entitled to both back and front pay, but argue that the district court erred in determining the amount of back pay and front pay liability, and in holding Hardaway personally liable. Above we determined that Hardaway is liable as a general partner of Riviera Beach and address only the damage awards made by the district court on Count I.
 
 
 57
 In deciding counts II, III, and IV against Sterling Group, the jury found them liable for $173,460.00 in back pay and $247,210.00 in front pay. After deciding count I in favor of Virgo, the district court independently found these determinations reasonable and awarded exactly the same amounts to Virgo on count I. By independently adopting the jury's finding on back pay and front pay which were based on the testimony of Virgo's expert, we assume that the district court also relied on the facts and figures of Virgo's experts. Therefore we review the basis of the Virgo's expert testimony on damages.
 
 
 58
 Dr. George Reavy, an expert in economics, testified on behalf of Virgo. At trial Virgo testified that her salary as the general manager at the Sheraton Ocean Inn and the other hotels at which she worked was $35,000 to $40,000 plus bonuses. Reavy used the $40,000 figure as the basis for his calculations of back pay and front pay.[10] Assuming that in the absence of sexual harassment Virgo would have continued her employment at the Sheraton Ocean Inn as general manager, he increased the 1987 salary figure by a three percent per year cost of living adjustment to arrive at a figure of $46,350. After taxes he determined her income at the date of trial to be $42,966. He then subtracted the amounts she actually earned between 1987 and the date of trial.[11] For those time periods when she was unemployed Leavy subtracted $12,480 per year as the amount she could have earned if she had taken a job paying her minimum wage. On this basis Reavy calculated Virgo's loss in back pay to be $173,460. His calculations did not account for educational background, experience, or possible changes in position.
 
 
 59
 Regarding front pay or future lost earnings, Reavy testified using a chart he created that reflects the difference between a current salary of $42,966[12] less her current earning capacity of $12,480 per year, discounted to present value, and this is described as her annual loss. In order to make the jury's task easier, Leavy charted the annual loss from ages 41 (Virgo's age at the time of trial) to 65 discounting to present value. For example, if the jury determined that Virgo's inability to work at her original capacity would continue until age 65, the chart calculated her loss in present value terms to be $660,952. If the jury had determined that Virgo would be unable to work for ten years, her loss would be $288,746. At the conclusion of trial the jury awarded Virgo $247,210 in front pay damages on counts II, III, and IV, and the district judge awarded the same amount on count I based on his own independent review of Reavy's expert testimony.
 
 
 60
 At oral argument Appellants questioned the accuracy of these figures, but their brief does not contain any specific examples of how Leavy's figures are inaccurate or unreasonable. Based on the comments made during oral argument, it seems as if they contest the inclusion of a three percent cost of living adjustment for each year. Such an adjustment is reasonable and not excessive. Second, the Appellants also object to the district court's failure to specifically state the time periods for which it was awarding damages and discuss the adequacy of Virgo's mitigation efforts. Certainly for the sake of clarity and precision it would have been better for the district court to have specifically set forth the time periods, amounts, and basis for its award of damages, even though an expert had already testified as to the calculations. However, in the absence of any proof discrediting the basis for the expert's opinion, we find no error in the court's calculations. For the reasons stated above, we affirm the district court's damages calculations.
 
 IV. Conclusion
 
 61
 Accordingly, we affirm the district court's holding that the Hardaway, Main Street Properties, and Riviera Beach are jointly and severally liable for quid pro quo sexual harassment in the amount of $173,460 in back pay, $247,210 in front pay, for an aggregate amount of $420,670. Virgo is also entitled to recover her attorneys' fees and costs associated with this appeal.
 
 
 62
 AFFIRMED.
 
 
 
 *
 Honorable Harlington Wood, Jr., Senior Circuit Judge for the United States Court of Appeals for the Seventh Circuit, sitting by designation
 
 
 [1]
 On October 15, 1992, the district court granted plaintiff's motion to substitute Main Street Properties, Inc. as a party defendant for Imperial Associates, Inc. Main Street Properties became a partner in Riviera Beach Associates when it took over all the assets of Imperial Associates
 
 
 [2]
 Originally the complaint named Jones as a defendant in this action, but he was dismissed after Virgo failed to serve him with the complaint within 120 days. See Fed.R.Civ.P. 4(j). Interestingly, Jones was the central wrongdoer, yet he never testified at trial
 
 
 [3]
 The current version of Appellate Rule 4(a) became effective on December 1, 1993, and we are applying it retroactively to a notice of appeal filed on December 31, 1992. Burt v. Ware, 14 F.3d 256, 260 (5th Cir.1994) (per curiam); Leader Nat'l Ins. Co. v. Industrial Indem. Ins. Co., 19 F.3d 444, 445 (9th Cir.1994) (adopting Burt's reasoning). Burt noted that the Supreme Court's order adopting the new version of Rule 4(a) provided that it was to apply to all cases then pending "insofar as just and practicable," id. at 258, and that the only limitation on the Court's power to apply procedural rules retroactively is contained in 28 U.S.C. Sec. 2074, which prohibits retroactive application where "the application of such rule ... 'would work injustice.' " Id. at 259. No injustice results by application of Rule 4 here
 
 
 [4]
 Neither party contends that the separate document requirement has been waived in this case and thus we do not address the issue. See Bankers Trust Co. v. Mallis, 435 U.S. 381, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978)
 
 
 [5]
 The Eleventh Circuit recognizes all of the Fifth Circuit decisions rendered prior to the close of business on September 30, 1981, as binding precedent. Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir.1981) (en banc)
 
 
 [6]
 Courts predominantly apply the standards promulgated by the National Labor Relations Board when deciding whether two entities should be treated as a joint employer. McKenzie v. Davenport-Harris Funeral Home, 834 F.2d 930, 933 (11th Cir.1987). A "joint employer" relationship is different from, though sometimes confused with, a "single employer" situation. Clinton's Ditch Coop. Co. v. National Labor Relations Bd., 778 F.2d 132, 137 (2d Cir.1985) (identifying the distinctions between these two types of situations), cert. denied, 479 U.S. 814, 107 S.Ct. 67, 93 L.Ed.2d 25 (1986). The district court fully analyzed whether Riviera Beach and Sterling Group met the single or integrated enterprise theory, and determined that the test was not satisfied. Neither party contests this finding and we do not address it
 
 
 [7]
 During trial Virgo offered the Management Agreement between Riviera Beach and Sterling Group as evidence to show that Riviera Beach exercised control over Sterling Group, and the district judge admitted the exhibit into evidence over the Appellants' objection. The document describes the authority vested in Sterling Group by Riviera Beach and is signed by Hardaway and a representative of Sterling Group. In this appeal the Appellants argue that the admission of this document was error. In reviewing the trial court's decision for an abuse of discretion, United States v. Stout, 667 F.2d 1347, 1353 (11th Cir.1982), we find the Appellants' arguments meritless and the evidence clearly admissible
 
 
 [8]
 We note that the district court barred the Appellants from introducing exhibits and calling witnesses because they failed to comply with the court's order requiring the submission of witness and exhibit lists before trial
 
 
 [9]
 The Appellants also seem to argue that Riviera Beach and Hardaway cannot be held liable for Jones' action because Hardaway did not know of the harassment until after Virgo resigned. Here Appellants confuse the standards imposed in hostile environment claims with those applied in quid pro quo claims. In hostile environment sexual harassment cases, respondeat superior principles apply and the plaintiff must show that the employer had actual or constructive knowledge of hostile work environment and took insufficient remedial action. Steele, 867 F.2d at 1316; Swentek v. USAIR, Inc., 830 F.2d 552, 558 (4th Cir.1987). In contrast, quid pro quo claims do not require any knowledge on the employer's part because the employer is strictly liable for the actions of its employees. Steele, 867 F.2d at 1316
 
 
 [10]
 The record does not indicate Virgo's specific salary at the time she left the Sheraton Ocean Inn, however, the Appellants do not argue that the $40,000 figure is incorrect
 
 
 [11]
 On March 31, 1987 Virgo resigned from her position at the Sheraton. Nine months later she began working at a Holiday Inn where she worked from January, 1988 until March, 1989, a total of 15 months. She then held several other positions for brief periods of time at the following hotels: Miami Travel Lodge, March 1990 to May 1990; Days Inn Orlando, August 1990 to January 1991; Sheraton Ocean Inn, January 1991 to July 1991; Holiday Inn, Ft. Pierce, for a two months period. At trial she testified that she left these positions because of problems associated with working with men
 
 
 [12]
 This figure is based on Virgo's salary of $40,000 in 1987, increasing it by three percent each year until 1992, less taxes