JOURNAL ENTRY and OPINION.
{¶ 1} Appellant Melvin P. Scott appeals the trial court's decision dismissing his malicious prosecution action against appellee Ruben Patterson. Patterson's Civ.R. 12(B)(6) motion sought dismissal of Scott's suit on the grounds of absolute immunity. Absolute immunity has been held by the Ohio Supreme Court to exonerate the false statements of those who make such statements in a judicial proceeding when the statements bear some reasonable relation to the activity reported.[1] This principle has not been confined to defamation actions but has been held to apply to malicious prosecution actions and used to exclude defamatory statements from suits claiming malicious prosecution.[2] Scott argues Dicorpo's
and Bigelow's absolute immunity principle should not be used to annihilate malicious prosecution as a cause of action, and he assigns the following error for our review:
 {¶ 2} "The trial court erred in granting defendant's Civ. Rule 12(B)(6) motion to dismiss, when the plaintiff presented sufficient operative facts in his complaint to establish a cause of action in malicious prosecution."
 {¶ 3} Having reviewed the arguments of the parties and the pertinent law, we reverse the decision of the trial court, and remand this cause for proceedings consistent with this opinion. The apposite facts follow.
 {¶ 4} Because this is a motion to dismiss under Civ.R. 12(B)(6), we are circumscribed to the facts as they are set forth in the complaint. As such, the complaint informs us that Ruben Patterson, upon exiting a night club in the Flats, observed that his car had been damaged. Kevin Lewis approached Patterson claiming knowledge of the perpetrator, but refused to identify the person. Enraged, Patterson punched Lewis in the face fracturing several facial bones. Once the police were summoned, Lewis identified Ruben Patterson as his assailant.
 {¶ 5} However, in a follow-up investigation, Patterson told the police that Melvin P. Scott assaulted Lewis. Both Scott and Patterson were indicted for assaulting Lewis. Patterson plea-bargained his case to a simple assault, agreed to cooperate in the prosecution of Scott, and settled his civil liability to Lewis for $120,000. Scott, however, refused to plea bargain and stood trial for the charge; a jury acquitted him of the charge of felonious assault against Lewis.
 {¶ 6} Subsequently, Scott sued Patterson for malicious prosecution. His complaint alleged Patterson knowingly and maliciously made false statements to the police to implicate Scott as the perpetrator so as to exonerate himself for the felonious assault charge. Scott alleged that Patterson, an NBA basketball player, made these allegation so as to avoid prosecution and jail time. Patterson filed a Civ.R. 12(B)(6) motion to dismiss claiming absolute immunity and the trial court agreed.
 {¶ 7} In his sole assigned error, Scott argues absolute immunity should not apply to his malicious prosecution case against Patterson. Scott's contention is not complicated. He alleges, at the scene of the assault, Lewis only identified Patterson as his assailant; however, Patterson in an attempt to exonerate himself, caused the police to initiate an assault action against Scott. But for Patterson, Scott argues the prosecution against him would not have commenced. Scott also argues Lewis and Patterson then conspired to frame him for the crime; consequently, he argues malicious prosecution is his appropriate remedy against Patterson.
 {¶ 8} At the outset, we note that malicious prosecution is a viable cause of action in this state. In Trussel v. General MotorsCorp.,[3] the Ohio Supreme Court held Ohio law, like the English Common law before it, has long recognized the tort of malicious prosecution, citing Pope v. Pollock.[4] The elements of malicious prosecution are (1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the defendant. See Rogers v. Barbera.[5]
 {¶ 9} In this case, Scott essentially argues Patterson's conduct of trying to frame him for a crime he did not commit caused damage to his dignity and reputation, for which he should be compensated. This is the substance of the holding in Pope.[6] Consequently, our standard of review in this action is whether the allegations in the complaint can prove beyond a reasonable doubt a set of facts which when construed most favorable to Scott will entitle him to relief.[7] Under this standard of review, we believe that Scott can prove his case and conclude the absolute immunity doctrine does not apply to this set of facts. Consequently, we conclude Dicorpo is not controlling.
 {¶ 10} In Dicorpo, attorney Robert Sweeney sent an affidavit to the Cuyahoga County Prosecutor's office claiming that Robert Kelly had embezzled company funds. In the affidavit, Dicorpo was implicated. Dicorpo sued Sweeney for defamation. The trial court in its wisdom held qualified immunity applied to resolve the facts of the case. On appeal, this court held absolute immunity applied, and the Ohio Supreme Court agreed that an individual who gives a statement or other information to the prosecutor reporting the actual or possible commission of a crime is absolutely privileged against civil liability for statements that bear a reasonable relation to the activity reported.[8]
 {¶ 11} Today, we draw a line between giving a statement to the police at the scene of a crime and giving a sworn affidavit to a prosecutor. Historically, when courts have reviewed this issue, the defining line has been whether the private individual initiated the criminal charges or whether the unfettered discretion of the prosecution initiated the action.
 {¶ 12} In Reasbeck v. Wheeling Pittsburg Steel Corporation,[9]
the Sixth Circuit Court of Appeals recognized in Ohio that a private individual may be held civilly liable for the initiation of a criminal proceeding only if the information is false or if the individual's desire to have the proceedings initiated was the determining factor in the commencement of the prosecution, citing Archer v. Cachat.[10] We review this pronouncement as impacting on whether a distinction lies between giving information to the police or giving an affidavit or statement to a prosecutor. As Reasbeck points out, the prosecutor in that case used his own unfettered discretion to prosecute Reasbeck.[11] That court used this fact to find the first and second prong of the malicious prosecution action absent because the prosecutor made the decision to pursue the case against Reasbeck.[12] We have taken that analysis one step further to advance the principle that informing the police is not the same as informing a prosecutor. Under Dicorpo, when the prosecutor is informed, the judicial proceedings start. In contrast, when the police are informed, only a complaint has been filed and the proceedings have not started. In this case, from what we know from the record, Patterson told his story to the police. Thus, Patterson's accusation triggered an investigation of the crime charged. This investigation against Scott is the substance of his malicious prosecution action against Patterson. But for Patterson's accusation to the police, Scott would not have been involved. We conclude the initial police work is investigatory and not a judicial proceeding contemplated by DiCorpo.
 {¶ 13} Assuming arguendo that informing the police is the same as informing the prosecution and thus a part of a judicial proceeding, we nonetheless conclude that the second prong of Dicorpo has not been met because Patterson's statements to the police must bear some reasonable relation to the activity reported.
 {¶ 14} In Bigelow, the Supreme Court of Ohio defined what "reasonable relation to the activity reported" meant. The defamatory statement must be pertinent to the inquiry. "To be pertinent and material it (privileged statement) must tend to prove or disprove the point to be established, and have substantial importance or influence in producing the proper result."[13] Here, Patterson's statements frame Scott for the crime and cannot be said to bear a reasonable relation to the activity reported.
 {¶ 15} Although we believe the 10th District's decision in bothHaller and Fair conflict with us today, we find some fundamental similarity in resolving what is meant by reasonable relation to the activity reported.
 {¶ 16} In Haller, the plaintiff argued that to extend Dicorpo to his facts would disable anyone from maintaining a malicious prosecution action. The 10th District disagreed. It went on to set up the facts inHaller, which showed a relation between Borror's statements and Haller. Here, we have no such relation. From what we can glean from the record, Patterson picked Scott out of the crowd that had gathered in the Flats and framed him for the crime. The inquiry is a reasonable relation, not an unreasonable one. Here, Patterson's statement, if true, is designed to frame, not to aid in the proper investigations of the case, and it does not have the indicia of false or mistaken information contemplated inDicorpo.
 {¶ 17} As a side note, it would be easy for us to resolve this case by saying that public policy should not be used to shield people like Patterson from liability. We decline to do this because of the wide net Dicorpo seems to have cast and the meaning it has been given, especially by the 10th District in Haller and in Fair.
 {¶ 18} We also decline to foster a distinction between Dicorpo and this case by advancing the theory that a difference exists between malicious prosecution and defamation actions, although there exists some consideration for this approach. In the majority of the immunity cases on this subject, the facts at issue revolve around testimony before a grand jury or an affidavit or statement given to the prosecutor. In these cases, the cause of action has been defamation and, when resolved by the court, the overriding concern is that if defamation actions are allowed, it would drastically burden the courts by the number of cases that would be generated and the potentiality of bringing the administration of justice into dispute. In Erie County Farmers v. Crecelius,[14] the court recognized the importance of malicious prosecution as an additional safeguard against those who commit perjury. We find safety in Erie's
pronouncement and conclude that this case is more about access to justice and does not concern defamation actions, which we recognize need to be restricted.
 {¶ 19} In conclusion, we hold absolute immunity inapplicable to the facts of this case. Furthermore, we make no pronouncement today on the issue of whether Scott has satisfied the first and second elements of a malicious prosecution action. The record is too sparse to resolve the issue of whether Patterson instituted or continued the prosecution of Scott. In Fair, the 10th District pointed out, and we agree, that this issue necessarily turns on the basis for a decision to prosecute. Because this matter was dismissed on a Civ.R. 12(B)(6) motion, we cannot say what prompted the prosecution, especially since the complaint alleges Lewis told the police at the scene that Patterson committed the assault. As for the second prong, which is probable cause, we cannot tell from the record whether Scott is prepared to rebut the presumption of probable cause by showing that the police lacked probable cause in this matter. Again, it is premature to resolve this issue. Consequently, we remand this case to the trial court for proceedings consistent with this opinion.
Judgment reversed and remanded.
ANN DYKE, J., and FRANK D. CELEBREZZE, JR., J., CONCUR.
[1] Bigelow vs. Brumley (1941) 138 Ohio St. 574; M.J. DiCorpo,Inc. v. Sweeney (1994), 69 Ohio St.3d 497.
[2] Haller v. Borror (June 14, 1994), Franklin App. No. 93 APE 12-1657; Fair v. Litel Comm. Inc. (March 12, 1998), Franklin App. No. 97 APE 06-804; Taplin-Rice-Clerkin Co. v. Hower (1931), 124 Ohio St. 123;Stephenson v. McCurdy (1931), 124 Ohio St. 117.
[3] (1990), Ohio St.3d 142.
[4] (1889), 46 Ohio St. 367.
[5] (1960), 170 Ohio St. 241.
[6] (1990), 46 Ohio St. 368-371.
[7] Zuber v. Ohio Dept. Of Insurance (1986), 34 Ohio App.3d 42; Greeleyv. Miami Valley Maintenance Constrs., Inc. (1990), 49 Ohio St.3d 551.
[8] Dicorpo, p. 497.
[9] (Sixth Cir. 2000) 30 F.3d 1359
[10] (1956), 165 Ohio St. 286.
[11] Reasbeck, p. 4.
[12] Id.
[13] Bigelow, p. 587, citing Mauk v. Brundage, (1903), 68 Ohio St. 89,97.
[14] (1930), 122 Ohio St. 210.